## J. D. WHITNEY *v*. THE FIRST NATIONAL BANK OF BRAT-TLEBORO.

*Banks.    Deposit  of  Bonds  for  Safe  Keeping.    Neglect.    Evi-dence.*

1. The plaintiff delivered to the defendant bank $4000 of U. S. bonds and received this writing: "Received of J. D. Whitney four thousand dollars, for safe keeping as a special deposit    S. M. WAITE, C."    *Held*, that it was a naked deposit withcut reward; that the defendant wou'd not be liable for the robbery or larceny cf the bonds, unless there was complicity or bad faith; that it was answerable only for *fraud* or for *gross* negligence; that the law demands good faith, and the same care of the plaintiff's bonds as defendant took of its own of like character.

2. The bonds were not delivered at the *solicitation* of defendant; the bailment was *gratuitous;* and it was error for the court to allow the jury to *speculate* as to the benefit derived from the purchase and sale of coupons.

3. It was error to instruct the jury that there might be a benefit to defendant, "perhaps in the sale of the bonds," when by the contract it had no right to sell or use the bonds; and also error in using these words, "perhaps in some other way,"—a way not disclosed by the evidence.

4. Evidence showing that other depositors of bonds in this bank had been misused, or wronged by the cashier, is not admissible to prove that the plaintiff was.

5. The facts, that the safe was left open during the transaction of business, that there was no gate in the passage way from the rear of the banking room, behind the counter, that only one person was left in charge of the bank about noon each day, do not seem so unusual as to be accounted negligence, much less gross negligence.

6. The true test of gross negligence in this case is whether the defendant took the same care of these bonds as it did of its own.

7. No notice having been given the defendant to produce its books, no request for their production during the trial, no evidence that there was any entry in them touching the bonds, and the books being in the hands of (the receiver, it was error for the court to charge that their non-production might be considered by the jury to the defendant's prejudice.

8. If a party fails to call for books, when he has a right to have them, it wi'l not be presumed that there are entries in them beneficial to such party.

CASE for negligence in keeping certain U. S. bonds. Plea, general issue. Trial by jury, March Term, 1881, TAFT, J., pre-siding. Verdict for the plaintiff to recover $7,149.89. The facts in this case are sufficiently stated in the opinion of the court, and in the 50 Vt. R. 388, where this case is reported, except the fol-lowing request by the defendant and charge to the jury. The de-fendant requested the court to charge the jury:

" 11.  Upon the gratuitous bailment existing the defendant is only liable for gross negligence in the keeping of the bonds whereby they were lost.

" 12.  And if the jury find that the bank was robbed of the bonds, the defendant is not liable except it was guilty of some gross negligence which occasioned the loss.

" 13.  Such negligence is equivalent to fraud and cannot be presumed or inferred, but must be in some particular which can be stated, and must be proved by the plaintiff to entitle him to recover.

" 14.  The true test of gross negligence is whether the defendant took the same care of the plaintiff's bonds as it did of its own. That is the measure of its undertaking, both as defined by law, and as actually occurred between the parties upon the statement of both parties."

The court charged, among other things:

" Now, this was a contract to keep the property, the bonds of the plaintiff, safely.  I believe it reads ' for safe keeping.'  There is evidence tending to show that it was made at the solicitation of the cashier of the defendants.  And the proof being, or the concessions in the case being, that the defendant was acting in the line of taking special deposits in that business, whatever the cashier did in the business would be the act of the defendant itself.  And there is evidence tending to show that the bank received a benefit from this special deposit and deposits of like character by the purchase and sale of the gold coupons; and perhaps in some other way; perhaps in the purchase and sale of the bonds themselves. There is evidence in the case which tends to show that they purchased these coupons which were payable by the government in gold, which at that time was bearing something of a premium, and buying them at a less rate than the market quotations of them at the time that they purchased, a difference being made, the price depending upon the state of the market, and whether it was regular or settled.  Of course if the market was steady for a long time, and quotations were regular at one rate, they could perhaps afford to pay nearer to it than they could where the market was fluctuating and prices changing from day to day.

" If you find that this contract was made and these bonds delivered, the special deposit made at the solicitation of the defendant, with the expectation of receiving gain and benefit, and they did receive such benefit, or expected to do so, by the buying and selling of the bonds or in any other way that justified them in their action, with reference to the matter, or that induced it, or in keep-

ing a set of customers that they wished to have deal at the bank, or for any other reason that was satisfactory to them, although nothing was paid in money by the plaintiff to the defendant for taking these bonds and taking care of them ; in that case the court tell you that the defendant was bound to exercise ordinary care and diligence in the custody of these bonds, such care and caution as a prudent man would exercise where he is guided by those considerations which ordinarily regulate the transactions of human affairs ; the same rule which is conceded to be the law, and which the court tell you is the law, that exist in those cases where the bailment is one for hire or reward, as it is called ; the same rule of diligence that would be required of the bank in case Mr. Whitney went to the bank and said, ' I will pay you one per cent. annually for keeping these bonds.' That is, a bailment which is called one for hire or reward."

*Kittredge Haskins* and *E. J. Phelps*, for defendant.

The bailment was gratuitous; if so the defendant was only liable for loss of the bonds caused by gross negligence. *Coggs* v. *Bernard*, 2 Lord Ray. 909 ; *Foster* v. *Essex Bank*, 17 Mass. 501, 479 ; *Nat. Bank of Lyons* v. *Ocean Nat. Bank*, 60 N. Y. 278 ; *First Nat. Bank of Carlyle* v. *Graham*, 100 U. S. 644 ; *Scott* v. *Nat. Bank of Chester Valley*, 72 Penn. 471 ; *DeHaven* v. *Kensington Nat. Bank*, 81 Ib. 95 ; *Nat. Bank of Allentown* v. *Rex*, 89 Ib. 308 ; *Smith* v. *First Nat. Bank*, 99 Mass. 605 ; *Jenkins* v. *Nat. Vill. Bank*, 58 Me. 275 ; *Spooner* v. *Mattoon*, 40 Vt. 300 ; Story Agency, s. 16 ; Schouler Bail. pp. 15 to 54; Story Bail. s. 23.

Gross negligence is a degree of negligence that is equivalent, or nearly equivalent, to fraud. It is precluded where the bailee takes the same care of the deposit as he does of his own similar property. It is not the want of the care exercised by the most prudent men, but of that employed by " the most inattentive." *Coggs* v. *Bernard*, *supra ; Foster* v. *Essex Bank*, *supra; Tompkins* v. *Saltmarsh*, 14 Sergt. & R. 275 ; *Nat. Bank of Allentown* v. *Rex*, *supra ;* Story Agency, s. 16 to 19 ; Schouler Bail., *supra ;* Jones Bail., s. 8 ; 72 Pa. 471.

It is well settled that officers of a corporation can make no admissions that will be evidence against it, except where such ad-

missions are part of the *res gestœ* which is in itself admissible. No antecedent or independent fact can be so proved. Ang. & Ames Corp., pp. 299–300 ; 1 Greenl. Ev., s. 436 ; Story Agency, 115 ; *Ruby* v. *Hud. Riv. R. R. Co.*, 17 N. Y. 131 ; *Hamilton* v. *N. Y. Cen. R. Co.*, 54 Ib. 334 ; *Nat. Bank of Lyons* v. *Ocean Bank*, 60 Ib. 278 ; *Underwood* v. *Hart*, 23 Vt. 120.

*Martin & Eddy,* for plaintiff.

In the case of bailment, it has been always understood and held that if the bailee spontaneously proposes to keep the goods of another, he is answerable for the want of ordinary care, or, in other words, he is held to the same degree of care that he would be if he was receiving a just compensation for keeping the goods. 2 Kent. Com. 565 ; Jones Bail. 55 ; Story Bail. 80, 81 ; Schouler Bail. 39 ; *Newhall* v. *Paige*, 10 Grey, 268 ; Story Bail. 153 ; 1 Parson Con. 431 ; 1st Thompson Nat. Bank Cases, 466.

If defendant took upon himself the burden of exercising a greater degree of care than he otherwise would have been obliged to take, he is liable if he fails to perform. Schouler Bail. 21 ; Story Bail. s. 71, p. 77 ; Jones Bail. 54 ; 2 Kent Com. 560 ; 2 Par. Con. 94. The defendant's fourteenth request should not have been granted. Sher. & Redf. Negl. 19 ; *Doonan* v. *Jenkins*, 2 Ad. & El. 256 ; *Rooth* v. *Wilson*, 1 B. & Ald. 59 ; Schouler Bail. 44, 45, 46 ; 2 Par. Con. 91, 92, 93 ; 2 Kent Com. 563.

In no case that we have been able to find has it been claimed or held that the question whether the benefits or expected benefits to be derived by the bailee from such deposits might not have formed the basis of and induced the solicitation, nor that this was not a proper question to submit to the jury, and one which would warrant them, from the receipt or contract itself, the language used and the surrounding circumstances, in finding that these did constitute an inducement and consideration to the bailee upon which his promise to keep safely was made. *Foster* v. *Essex Bank*, 17 Mass. 479 ; *Scott* v. *Nat. Bank of Chester Valley*, 72 Penn. 471 ; *Leach* v. *Hale*, 31 Iowa, 69 ; *Newhall* v. *Paige et al.*, 10 Gray, 366 ; *Lawrence* v. *McCalmont*, 2 Howe, 452 ; 48 Vt. 300 ; 16 How. 874 ; 2 Bl. Com. 453 ; 11 M. & W.

113. Reasonable care demanded by a gratuitous bailment. Schouler Bail. 42, 58 ; 2 Kent Com. 560 ; Sher. & Redf. Negl. ss. 21, 23 ; *Newhall* v. *Page,* 10 Gray, 366 ; *Ludor* v. *Lewis,* 3 Met. (Ky.) 378. See also 10 Cush. 117 ; 37 Conn. 272 ; 26 Vt. 316 ; 6 Pa. St. 417 ; 62 Ill. 59 ; 32 Mo. 280 ; 14 Allen, 448.

The opinion of the court was delivered by

REDFIELD, J. This is an action on the case, charging the defendant with negligence and want of care in keeping $4000 of U. S. bonds as a special deposit, and by which negligence said bonds were lost. The defendant executed and delivered to the plaintiff, on delivery of the bonds, the following contract or receipt :

"The National Bank of Brattleboro, Brattleboro, Vt., July 23d, 1866. Received of J. D. Whitney, four thousand dollars for safe keeping, as a special deposit.      S. M. WAITE, C."

The written contract states the understanding of the parties, and by that the obligation and duties of the defendant must be determined. The words in the contract " for safe keeping," merely express the purpose of the deposit ; and it would be implied if it had not been expressed. It was, as we think, a naked deposit, without reward. The possible conjectural benefit that might accrue to the defendant by purchasing the coupons, if the depositors should offer to sell them to the bank, when there was no obligation to do so, is too remote. The bank would be supposed to have provision for greater security for the safe keeping of money and valuable papers than dwelling-houses and other ordinary buildings ; and it would be implied that these bonds were to be kept in the vault of the bank, and with the same security as the bank afforded to valuables and papers of like character of its own ; and a less degree of care and diligence would be required than if the bonds had been received by the defendant for hire and reward, or for some temporary use of its own.

The exact measure of responsibility of a naked bailee, without reward, is stated in somewhat different language by text writers, and in the adjudged cases. Sir Wm. Jones states : " That a bailee of this sort is answerable only for *fraud* or for *gross* neg-

lect, which is considered as evidence of it, and not for such *or-dinary* inattentions as may be compatible with *good faith* . .
in this case the measure of diligence is *that which the bailee uses in his own affairs."* The nature of the property and purposes the parties had in view, as appears from the quality of the property and character of the act of deposit, are a part of the case. Banks are instituted, and its buildings constructed, for the delivery in, and safe keeping of, money and money securities ; and these bonds were deposited in the defendant's bank for the greater security of the bonds,—" for safe keeping." And it must be implied that the defendant undertook to use all the appliances for the security of its own property for " the safe keeping " of the plaintiff's bonds, and in *good faith.* But it would not be liable for the robbery or larceny of the bonds, unless there was complicity or *bad faith.* The defendant requested the court to charge the jury that upon the evidence the bailment was gratuitous. The court declined so to charge, but did charge that the bonds were delivered at the *solicitation* of the defendant. The plaintiff testified that the cashier passed the bonds in an envelope to the plaintiff on the counter of the bank, and remarked, " You can leave these bonds, if you would like to, for safe keeping." Plaintiff enquired, " if they would be safe to leave them there ?" The cashier replied, " they will be as safe as our own property." There was in this no *solicitation* for the custody of the bonds, or suggestion of expected benefit, but merely a suggestion that he might leave them if *he chose to,* and they would be safe as their own property. The bank obtained no right to sell or use the bonds, but a naked *custody.* If the plaintiff left the bonds, after the interview as detailed by himself, it was of his own free will and choice. The court charged the jury that there was evidence of a *special agreement* to keep the bonds safely. But, as has been intimated, the leaving the bonds for " safe keeping," or accepting them for that avowed purpose, is not a covenant or warranty that the defendant will protect the bonds absolutely from all danger, or indemnify the plaintiff against loss, but is rather a declaration of the purpose of the parties in placing them in the defendant's safe, and giving the

protection and immunity which the means of safety in the bank afforded like securities of the defendant.

The court further charged that there was evidence in the case tending to show that "the bank received benefit from the special deposit by the purchase and sale of the gold coupons; and perhaps in some other way; perhaps in the purchase and sale of the bonds themselves."

It is to be noticed that the *contract* gave the defendant a naked *custody* of the bonds, without any right to *sell* or *use* the *bonds* or *coupons*. If plaintiff should thereafter elect to sell the coupons to the defendant, it was a matter of *choice*, and we see nothing in the case evidencing that in the sale of coupons to the defendant there was other *benefit* than an accommodation to the plaintiff.

We think the court erred in allowing the jury to go into speculation and conjecture to conceive a possible *benefit* to the defendant from the deposit in order to find a different rule of liability than that imposed by the *contract*. It was error to instruct the jury that there might be benefit to the defendant " perhaps in the sale of the bonds," when by the contract it had no *right* to do so ; and " perhaps in some other way," a *way* not disclosed by the *evidence* or known to the court. This being a naked bailment, without reward, the legal *rights* and duties of the parties arise from the character of the property and relation of the parties. And when " the winds are let loose," and the imagination has no rein, arising from the loss of property, by the alleged robbery of a public money institution, affecting the rights of many persons, it is the more incumbent upon courts to keep the case " well anchored" in the law, and keep out of the case all evidence, especially combustible matter, that does not legally affect the *rights* and *duties* of the parties. The rule of law affecting this class of bailments (unless there be special facts which qualify the duties which this case does not disclose) would require this defendant, considering the nature of the property, to have kept the bonds, in *good faith*, within its safe, under all the safeguards afforded to like property of its own. This is the concurrent rule of the civil and common law. Jones on Bail., pp. 122–123, p. 46, note 18 ; Lord HOLT, in *Coggs* v. *Bernard*, 2 Lord Raym. 915 ; Chancellor

KENT, 2 Com. 562 ; *Foster* v. *Essex Bank*, 17 Mass. 479 ; *First Nat. Bank of Carlyle* v. *Graham*, 100 U. S. 644.

The plaintiff claims that there was evidence of negligence of the defendant, in this, that there was a passage way from the rear of the banking room, behind the counter, not protected by a gate ; that the safe was left open, during business hours, for convenient access of the bank officers in the transaction of business ; that a short time, about noon, each day, the bank was left in charge of one person, while his associate was absent to dinner. Negligence was a *fact* to be proved by the plaintiff to the jury. But there would seem nothing so unusual in these facts, if proved, that they could be accounted negligence, much less gross negligence, such as would charge the defendant. A gate was proved to be in use in *some* banks, and would be in a measure, doubtless, a barrier against intrusion, but slight in its character. New appliances for the safety of property are suggested by experience, and applied from time to time if found useful, but none have been found that subtle villainy cannot surmount or evade. All banks have not the same protection against fire, robbery and violence ; and none are absolutely safe. Men have been gagged and robbed in the banks and on the street. Yet men continue to travel the street with money and valuable papers in their pockets, and cashiers continue during business hours to manage banks alone in the country villages of this state ; and it is deemed safe. Robbery at midday in a country village, like lightning or the whirlwind, is not kept in mind as a present danger. When a loss occurs, the mind becomes quickened, and conceives that this or that precaution would have averted it. There are manifold inventions for the security of property, fire-proof and burglar-proof locks and safes, and more appliances in the cities where the amount and exposure is greater, but all are not the same. But where a deposit is made in a country bank or country store for safe keeping, the law implies a duty to employ the means of security, and keep it as he does his own.

II. To prove the loss of the bonds by the defendant's negligence, the plaintiff introduced the depositors of bonds, of different

character, at various times with the defendant for safe keeping; and they were allowed against defendant's exceptions to state their several interviews with Waite, the cashier of defendant's bank. In one case the depositor had lost his receipt for the bonds, and the cashier declined to account for the bonds until the receipt was produced; and when he found the receipt he intimated to the cashier that he would have lost the bonds if he had not found the receipt, whereupon the cashier requested him to leave the bank. If Waite was in the wrong in that altercation, it is not easy to see how it should prejudice the defendant in *this* case. No property was lost, but the witness intimates that Waite showed an improper *disposition*. It should be noticed that this evidence was offered, on the opening of the case, to prove the averments in the declaration, that plaintiff's bonds were lost by the *negligence* and *want of care* of the defendant. Most of this evidence does not tend to show a *want of care* but rather with the want of *good faith* in purpose and intentions. Many of the contracts of the depositors were unlike this; and in one case the cashier was specially authorized to cut off the coupons, as they became due, and give credit for them on the bank books, and the using of the coupons did not tend to show a wrongful appropriation. It would not do to prove that other depositors and customers of the bank had suffered insolence or wrong at the hands of Waite, and therefore infer this plaintiff may have suffered in *some manner* by the misconduct of Waite. Most of the detailed interviews between other depositors and Waite are matters *inter alios*, and not a part of the *res gestae* in issue in this case, and therefore not legal evidence in this case. If it had been offered to *rebut* that part of the defence, that the bonds in question were lost by robbery of the bank, some part of the testimony of the other depositors might perhaps be properly admissible, so far as any of the testimony might tend to show the bonds deposited for safe keeping, or other property in the bank, had been wrongfully abstracted or embezzled by an officer of the bank; but no recovery could probably be had on that ground under this declaration, as it has been stated to us in argument. The fact that the defendant received on deposit bonds other than the plaintiff's was, of course, properly admissible.

III.   In regard to the charge of the court and the many 'exceptions to it, as the case must be sent back to the County Court for another trial, we omit to say more than we have already said, except that on this matter of the defendant's liability, we think he was entitled to have his eleventh, twelfth, thirteenth and fourteenth requests complied with.   We think, also, the charge of the court that the non-production of the books of the bank by the defendant might be considered by the jury to its prejudice was error. No notice had been given to the defendant to produce the books ; no request for their production during the trial; no evidence in the case that there was any entry on the books touching these bonds, and the books were then in the hands of the receiver.   If the plaintiff wished the books of the bank in evidence, he should have called for them in some proper way, or otherwise " held his peace."   And we see no ground of presumption that there were entries on said books that would have been of benefit to either party.

Judgment is reversed and cause remanded.