## Lionel Jobidon and Irene Jobidon v. Antonio Lussier

[ 204 A.2d 88 ]

June Term, 1964

Present: Holden, C. J., Shangraw, Barney, Smith and Sylvester, JJ.

Opinion Filed October 6, 1964

*Lee E. Emerson* for plaintiffs.

*Graves & Hull* for defendant.

**Smith, J.** The plaintiffs brought suit against the defendant in the Orleans County Court in a civil action, claiming fraud and deceit on the part of the defendant in the sale of a farm, livestock and machinery to the plaintiffs in the Town of Albany. The complaint of the plaintiffs contained two counts. The defendant was arrested on mesne process, and was released on the furnishing of bail in the amount of Twenty-five Thousand Dollars.

The defendant filed a motion with the Orleans County Court asking that the writ of the plaintiffs be quashed and the suit dismissed. Defendant's motion was granted by the lower court and the plaintiffs

are here on appeal from the quashing of their·writ and the dismissal of their suit.

· The basis of the defendant's motion to quash the writ and dismiss the suit was that both counts of plaintiffs' complaint sounded in contract, and not in tort, and that service made on the defendant by the arresting of his body was contrary to the provisions of 12 V.S.A. §3521, quoted below:

> *"Imprisonment for debt abolished; exceptions.* A person who is a resident of any of the United States shall not be arrested or imprisoned on mesne process issuing on a contract, express or implied, or on an execution issued on a judgment recovered in an action founded òn ˙such˙ contract, except as hereinafter provided."

The new Practice Act provides for only one action at law known as a Civil Action. 12 V.S.A. §971. However, such Act does not enlarge the incidents attending the various forms of action which existed prior to April 2, 1915, such as arrest of the body. 12 V.S.A. §972. As this Court said in *Neverett* v. *Towne,* 123 Vt. 45, at 56, 179 A.2d 583:

> "The new practice act does not allow a complaint that is actually in contract to be commenced by a writ issued as a capias with the arrest of the defendant thereon, and a court· would be without jurisdiction of such process."

· No claim is made here that the law is not as above stated. What is claimed by ·the plaintiffs in their brief is that both counts of their complaint sound in tort, and not in contract as is claimed by the defendant, which latter contention was sustained by the ruling of the trial court.

The task before us then is to examine the complaint to determine if the counts therein, or either of them, set forth a breach of legal duty arising solely from a contract. If it should appear in the course of our examination that only one count of such complaint is in contract, while the other is in tort, the action of the lower court must be affirmed. *Howard* v. *Chapman,* 101 Vt. 152, 154, 141 Atl. 686; *Parker* v. *Roberts,* 99 Vt. 219, 222, 131 Atl. 21.

We must treat the motion of the defendant to dismiss the action as. being in the nature of a demurrer, with its function to test the sufficiency of the complaint admitting the truth of the facts well

pleaded. *Price* v. *Rowell,* 121 Vt. 393, 395, 159 A.2d 622; *State* v. *Verham News,* 121 Vt. 269, 272, 155 A.2d 872.

The first count of the complaint alleges that the defendant knowingly made false representations and warranties to the plaintiffs relative to the farm, the cows and the farm machinery which the plaintiffs bought in reliance upon such representation. The plaintiffs have set forth eight of such claimed false representations. Seven of these misrepresentations (No. 1, 2, 3, 4, 5, 7, and 8) alleged to have been made by the defendant, were that the cows sold to the plaintiff were disease free and good milk producers, and that they were all due to freshen in a matter of days or weeks, and that the stable and milking equipment were in good repair, suitable in every way to keep the cattle disease free and in good producing condition. No claim is made by the defendant but that these allegations of fraudulent representation on the part of the defendant did not sound in tort, being representations as to facts and conditions in existence at the time such representations were made.

Defendant's claim is that No. 6 of such alleged misrepresentations indicates only the nonfulfillment of a promise to do something in the future, which while it might give plaintiffs an action for the breach of a contractual obligation, does not disclose a tortious act upon which capias could be issued.

The allegation referred to, No. 6, is:

"That a part of the equipment they were to get with the farm was a plow and tractor so that they could properly operate it as a dairy farm."

Later in the complaint appears:

"Said defendant never furnished the plaintiffs with any plow or tractor to carry on the dairy operations with."

Defendant has cited to us the case of *Comstock* v. *Shannon,* 116 Vt. 245, 73 A.2d 111, for his contention that false representation or broken promises referring only to the future do not afford the basis of actionable fraud where the action rests solely upon unfulfilled promises. But the Court in the Comstock case went on to say:

"But it is apparent that the present case is not one where the action rests solely upon unfulfilled promises."

The same situation exists in the instant case before us.

Here, as in the Comstock case, the misrepresentation as to the future was but one in a series of false representations, which, except for this one out of the series of eight, are admitted by defendant's motion to dismiss to support a tort action.

"The false statements of existing facts in the complaint could be found by the jury to have constituted a material inducement to the dealings between the parties and the right of the plaintiff to recover would not be changed because the jury could also find that he was induced to some extent in the matter by the alleged future misrepresentations. It is not essential that a misrepresentation of a material fact be the sole cause or inducement of the contract or transaction. It is enough that it constitute a material inducement." *Dezro* v. *Turner,* 112 Vt. 194, 196, 22 A.2d 173; *Potter* v. *Crawford,* 106 Vt. 517, 520, 175 Atl. 229.

A later decision on the same subject matter is found in *Gramatan National Bank* v. *Beecher,* 121 Vt. 39, at 46, 146 A.2d 246:

"While a promise, standing alone, does not afford the basis of actionable fraud, it is not improper to consider broken promises where there was a general scheme to defraud of which the promises were steps in a series of actions constituting the scheme. A future promise may be fraudulent when it is part of a general scheme or plan, existing at the time, to induce a person to act, as he otherwise would not, to his injury."

Plaintiffs have alleged such a general scheme on the part of the defendant to induce them to act here. The allegation of the future promise to furnish a tractor and plow is set up as part of the scheme. The lower court was in error in quashing the complaint and dismissing the suit based on the grounds set forth in defendant's motion relating to Count 1.

In order to understand the question presented to us by the appeal from the lower court's ruling on defendant's motion relative to Count 2 of the complaint, we find it necessary to set forth this part of the complaint in full:

"In a further civil action wherein the plaintiffs complain and say that on to wit, August 17, 1961, at Albany, aforesaid, the said defendant, with intent to deceive and defraud the said plaintiffs,

and to injure them in their good name and reputation, did take from the said plaintiffs a certain promissory note for $1,000.00 and agreed to place the same immediately to their credit in the Caledonia National Bank of Danville, Vermont, so that they could draw checks thereon immediately; that the said defendant did carelessly, wilfully and maliciously fail and neglect to place said note in the Caledonia National Bank immediately, well knowing that they, the said plaintiffs were going to issue checks immediately against the same, deposited to their credit in said Bank; that the said plaintiffs, not knowing that the defendant had failed and neglected to deposit said note to their credit in said Bank immediately, did issue checks immediately against the same on said Bank which said checks were protested for non-payment as a result thereof in the sum of $1,000.00;

That said defendant after knowing that payment on said checks as they were being issued was being refused by said Bank to be honored, did still carelessly, negligently and maliciously refuse, fail and neglect to deposit said note in said Bank to the plaintiffs' credit, whereby and by reason of which the said plaintiffs, being newcomers to the community of Albany, did suffer a severe impairment to their credit and reputation in the community in which they live and in said Bank, and did have to go to great trouble and expense in procuring funds with which to satisfy the people to whom said checks were given and whereby and by reason of which the social status of said plaintiffs in said community has been seriously impaired; they have been refused and cannot get any credit at the present time and their good name and reputation has been seriously injured, all to the damage of the plaintiffs as they say in the sum of $25,000.00 for the recovery of which, with just costs, this suit is brought."

The basis for defendant's motion to dismiss this count of the complaint was that no facts are alleged placing any obligation or duty upon the defendant except that he promised to place the note in the bank. Not enough facts are alleged, says the defendant, to constitute fraud, negligence, or any other tortious ground. The defendant's claim is that Count 2 alleges merely a promise and a breach thereof, which, if proven, would allow the plaintiffs to recover only for a breach of contract.

■ A careful examination of this count in plaintiffs' complaint does not disclose that the plaintiffs allege that the defendant was to receive any reward or recompense from the plaintiffs for depositing the note with the bank. The absence of any consideration for the promised act of the defendant from the plaintiffs, is also absence of an essential to a contractual relationship. We think that what is shown by the complaint is a bailment, solely for the benefit of the bailor (the plaintiffs) and with the defendant by reason of the facts alleged, a gratuitous bailee. However, the defendant was not a bailee for deposit only, but a mandatory bailee, *i.e.,* a bailee who undertakes, without compensation, to perform some act in regard to the thing bailed, in this instance, the placing of the note taken from the plaintiffs in the bank.

■ The measure of responsibility of a naked bailee, without reward, is generally stated to be that he is answerable only for fraud or gross neglect, and not for such ordinary inattention as may be compatible with good faith. The measure of diligence is that which the bailee uses in his own affairs. *Whitney* v. *First National Bank of Brattleboro,* 55 Vt. 154, 158-159; *Wetmore* v. *B. W. Hooker Co. Inc.,* 111 Vt. 519, 524, 18 A.2d 181.

The early case of *Hyde* v. *Moffat,* 16 Vt. 271, deals with the measure of responsibility under circumstances in some respects similar to those confronting us now. The defendant in the Hyde case sold lands to the plaintiff, and the plaintiff then entrusted the deed to the defendant who promised to place it on record. Defendant did not have the deed recorded, as he had promised, and plaintiff lost title to it, and the plaintiff sued in an action of case, charging the defendant with fraud in not recording the deed and seeking damages. Defendant demurred to the complaint and upon the demurrer being overruled, appealed to this Court.

The Court first held, in substance, that a gratuitous bailee could not be held in an action of tort for nonfeasance alone, but that if an action is to be sustained it must be for some malfeasance of the defendant and not for mere passive neglect.

The reasoning then applied by the Court in the Hyde case in the light of the demurrer that had been filed, we believe applies to the instant case, with the motion to dismiss in the instant case being equivalent to the demurrer in the earlier action.

"We are not to inquire of what tortious act the defendant is guilty, and we shall have the answer when we ascertain what the

plaintiff has charged upon him; for the defendant by his demurrer has admitted all the facts alleged according to their legal effect. The demurrer admits not only the substantive facts charged, but also admits the consequences and results which are charged, provided such consequences and results may be fairly considered to be the legitimate results of such acts. Nor is the motive, with which the acts is charged to have been done, to be entirely overlooked and if the motives, with which the acts are alleged to have been committed, are such as may be reasonably supposed to have influenced the acts, the demurrer admits, not only the acts themselves and the legitimate results which flow from them, but it also admits the motives with which the act was done." *Hyde* v. *Moffat, supra,* p. *279, 290.*

Turning now to the case before us, the first fact charged is that the defendant agreed to place in a bank the note which he had taken from the plaintiffs. Second, that after receiving the note from the plaintiffs, the defendant neglected and failed to place the note in the bank in accordance with his promise. Third, that the defendant, after he had knowledge that checks issued by the plaintiffs in reliance upon the note having been placed in the bank by the defendant, were being dishonored, continued in his neglect or refusal to place the note in the bank as he had promised.

The plaintiffs have alleged that the motives which influenced the defendant to fail to put the note in the bank were to deceive and defraud the plaintiffs and injure them in their good name and reputation. The defendant, however, by admitting the act, does not admit the motive, unless the acts themselves and the consequences that would naturally result from such acts are not the legitimate offspring of such motives. *Hyde* v. *Moffat, supra.*

If the complaint had set forth only an initial neglect or failure to place the note in the bank on the part of the defendant, before any consequences had been suffered by the plaintiffs as a result of defendant's neglect, it might be doubtful that the defendant, by admitting this act, would also be admitting to the motives charged.

However, the allegations of the complaint also are that the defendant, after gaining knowledge that plaintiffs' checks, issued in reliance upon the defendant's promise to place the credit in the bank, were dishonored, still continued to neglect or refuse to act as he had promised.

We think the rule as stated by Professor Warren Seavey, in his "Reliance Upon Gratuitous Promises or Other Conduct," 64 Harvard Law Review, p. 928, citing *Brunel* v. *Nashua Bldg. & Loan Assoc.* 95 N. H. 391, 64 A.2d 315, becomes applicable here:

> "Where a person represents by word or act that he has done or will do something upon the performance of which he should realize that others will rely, he is liable for expectable harm caused by the reliance of others and his failure of performance, if his representation was negligent or intentionally false, or if without excuse he fails to perform."

■ A jury, confronted with a bailee who refused to perform a mandatory bailment with knowledge that the continuance of such non-performance would result in loss of credit and reputation to the bailor, might reasonably suppose that the motives which animated the non-action of the bailee were the corrupt motives here charged by the plaintiffs. Under such circumstances, the motion to dismiss, treated as a demurrer, also admits the motives with which the act was done.

Having found that both counts of the complaint were sufficient to sustain the action, we must also find that the lower court was in error in quashing the complaint and dismissing the action. The entry is *Reversed and Remanded*.