## Ned H. Pettengill v. New Hampshire Insurance Company

[270 A.2d 883]

No. 49-69

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 6, 1970

Rehearing Denied October 29, 1970

*McNamara, Fitzpatrick & Sylvester,* Burlington, for Plaintiff.

*Richard E. Davis,* Barre, for Defendant.

**Per Curiam.** The complaint alleges two counts. The first charges fraud; the second alleges conversion of a portion of the proceeds of a certain check. The acts of wrongdoing, set forth in both counts, are founded on an alleged agreement which the plaintiff claims was made between counsel for the parties concerning the defendant insurance carrier's right of subrogation. Trial by jury resulted in a verdict and judgment for the defendant on both counts. The plaintiff appeals.

On December 15, 1958, a tractor trailer unit, owned by the plaintiff and insured by the defendant, was damaged in an accident involving a second vehicle owned by one Kelton and operated by his driver, Blanchard. Responding to the collision coverage provided in the insuring agreement, the defendant paid the plaintiff the sum of $11,348.56. This payment was made after a settlement negotiation which included a proof of loss statement and a subrogation agreement. By the terms of this agreement, the plaintiff pledged to the defendant, to the extent of the settlement, any future recovery which the plaintiff might collect from third persons or insurance carriers for their liability in the plaintiff's loss. A similar settlement was reached between the plaintiff and the Continental Insurance Company, the insurance carrier for cargo loss.

On March 16, 1959, the plaintiff, by his attorney Gelsie J. Monti, Esq., instituted an action in the Windsor County Court against Kelton and Blanchard, claiming damages in the amount of $30,000. In this action the plaintiff sought to recover not only property damage to his vehicle, but also additional consequential damages above and beyond the subrogated claims of the defendant. Neither the plaintiff nor Mr. Monti notified the defendant of this proceeding. However, the defendant learned of the case from other sources. It retained the law firm of Ryan, Smith and Carbine to protect its interest in the cause, as provided in its subrogation agreement with the plaintiff.

Mr. Monti took control of the trial of the plaintiff's case. The jury returned a plaintiff's verdict in the amount of $10,000. The cause was appealed to this court and is reported in *Pettengill* v. *Kelton*, 124 Vt. 472, 207 A.2d 245 (1965).

While the cause was pending on appeal the defendant Kelton, through his attorneys, the law firm of Black and Plante and Alfred Guarino, Esq., tendered to the Clerk of the Windsor County Court a check in the amount of the verdict, together with interest to the time of deposit. After the case of *Pettengill* v. *Kelton* was affirmed on appeal the Clerk, at the instruction of Kelton's attorney, drew a check which was payable to the order of "Ryan, Smith and Carbine, Attys. for Ned Pettengill" in the amount of $10,150 and bore the notation "judgment in Windsor County Court Case No. 3039, *Pettengill* v. *Motor Trans. Co.*" Kelton's counsel also prepared a stipulation for the signatures of Ryan, Smith and Carbine and Black and Plante for filing in the Windsor County Court to show "judgment satisfied." After receipt of this stipulation Ryan, Smith and Carbine redrafted it to include the name of the plaintiff's personal attorney, Gelsie J. Monti, Esq., and mailed the instrument to the latter's office for his signature.

Mr. Monti was in Florida when the proposed stipulation reached his office. Austin Noble, Esq., who was associated with Mr. Monti, undertook to take care of the matter. He discussed the proposed stipulation with R. Joseph O'Rourke, Esq., a member of the firm of Ryan, Smith and Carbine. Mr. O'Rourke informed Mr. Noble that by virtue of the subrogation agreement, the defendant New Hampshire Insurance Company and the cargo insurer were entitled to the first $11,348.56 of the plaintiff's recovery against Kelton. With this assurance, Mr. Noble signed the stipulation.

After receipt of the check of the Windsor County Clerk, the firm of Ryan, Smith and Carbine paid the attorney for the Continental Insurance Company $684, as the parties had previously agreed. The remainder of the fund, less disbursements, was remitted to the defendant. This much of the evidence is not in dispute.

The conflict in the evidence centers on an alleged agreement between the plaintiff through his attorney, Mr. Monti, and the defendant through its attorney, Mr. O'Rourke, during the trial of *Pettengill* v. *Kelton*. The theory of the plaintiff's case is

that this undertaking overrides the prior subrogation agreement and the defendant's right to the proceeds of Kelton's recovery. According to the plaintiff, it was agreed during the progress of the trial that the plaintiff should receive sixty percent of any recovery in his action against Kelton. The defendant was to receive forty percent of the recovery and pay the Continental Insurance Company for the amount it had paid the plaintiff in settlement of the cargo loss.

We turn first to the error claimed by the plaintiff in the court's ruling as to evidence. During redirect examination of Mr. Monti, plaintiff offered in evidence Plaintiff's Nos. 9, 10 and 11. Upon objection made by the defendant they were excluded. These are letters between Mr. Monti and Mr. O'Rourke during the month of May, 1965, following Mr. Monti's return to his office from Florida. This correspondence relates to the claim by Mr. Monti that an agreement to split the *Pettengill-Kelton* verdict, 60% to Pettengill and 40% to the insurer, New Hampshire Insurance Company, had been made, together with details relating to the agreement. Mr. Monti also demanded Mr. Pettengill's portion of the verdict. Mr. O'Rourke, in his letter of May 19, 1965, denied that any such agreement had been made. There was no declaration against the defendant's interest in the letters from Mr. O'Rourke. The offer was cumulative of oral testimony previously received. The letters from Mr. Monti were properly excluded as self-serving.

At the close of the evidence the plaintiff moved the court to direct a verdict against the defendant for both fraud and conversion. The substance of this motion was later renewed on the same grounds in the plaintiff's motion to enter judgment notwithstanding the verdict. Since they are related, we consider the motions together.

The plaintiff's claim of fraud and conversion are founded on Mr. O'Rourke's alleged concealment of the defendant's agreement to relinquish its right to reimbursement from the Kelton judgment when the stipulation of satisfaction was signed by Mr. Noble. This concealment, coupled with the representations by Mr. O'Rourke to Mr. Noble that the plaintiff Pettengill had no legal interest in the fund, it is claimed, was false and made with full knowledge and intent to deceive Mr. Noble.

As a result of Mr. Noble's reliance on Mr. O'Rourke in this respect, the plaintiff claims he was defrauded of his right to sixty percent of his recovery from Kelton.

The plaintiff and his counsel, Mr. Monti, testified in support of the allegation concerning the supplementary agreement of the defendant to share in the Kelton judgment on a prorated basis. However, the existence of the arrangement was directly denied and the issue was sharply contested by substantial evidence that such an agreement was never made. Mr. O'Rourke testified that he had no conversation with Mr. Monti and the plaintiff concerning splitting the proceeds of any recovery in the plaintiff's action against Kelton. Apart from this denial, the defendant's chief counsel testified that he had no conversation with Mr. O'Rourke or any other member of his firm relative to dividing the proceeds of any settlement or recovery obtained in the Kelton action.

■ Beyond that, in response to the defendant's motion for a directed verdict on the ground the plaintiff had failed to prove fraud, plaintiff's trial counsel, with commendable candor, stated, "I must concede there hasn't been much evidence of fraud." Such shortage of proof in the presence of substantial evidence, denying the existence of the agreement claimed by the plaintiff, precluded the lower court from directing a verdict for the plaintiff on the ground of fraud. Equivalent consideration required the court to overrule the plaintiff's motion for judgment after the verdict.

The same holds true of the plaintiff's motion for a verdict and judgment for conversion. The conversion count is also based on the sixty-forty agreement. The plaintiff also urges in his written brief that he was the sole legal owner of the proceeds of the award in the *Kelton* case, hence he was entitled to a directed verdict for conversion.

■ Insofar as the count involves the disputed agreement, as with the fraud count, it was for the jury to say whether such an agreement was ever made. If the jury should find, as in fact it did, that there was no such agreement, the subrogation rights between the parties are governed by their "loan receipt" executed at the time the defendant settled with the plaintiff for the property damage sustained in the Kelton accident.

The plaintiff acknowledged receipt of the settlement payment as a loan, without interest, repayable only in the event and to the extent of any net recovery the plaintiff may make from any other person for causing the damage to the tractor and trailer. The loan receipts further provide that:

> "as security for such repayment, the undersigned (Ned H. Pettengill) hereby pledges to the (defendant) all his . . . claim or claims . . . against said person . . . or any insurance carrier, and any recovery thereon, and hereby delivers to said 'Company' all documents necessary to show . . . its interest to said property. . . ."

To sustain the charge of conversion, it was essential for the plaintiff to establish that the defendant's appropriation of the Kelton recovery was unlawful. *Economou* v. *Carpenter*, 124 Vt. 451, 453, 207 A.2d 241 (1965) ; *Cone* v. *Drohat*, 117 Vt. 101, 102, 85 A.2d 498 (1952). The subrogation agreement and general rules of indemnity afforded the defendant, as pledgee, a legitimate right to deal with the proceeds of the plaintiff's recovery against Kelton as it did. *Moultroup* v. *Gorham*, 113 Vt. 317, 320, 34 A.2d 96 (1943). The plaintiff's motion for verdict and judgment in conversion was properly denied.

In submitting the case, the court instructed the jury that the plaintiff could not recover unless the jury should find there was an agreement to split the *Kelton* verdict on a sixty-forty basis. The presiding judge went on:

> ". . . (T)his is the first and fundamental fact that you have to find. If you cannot find that fact the defendant is entitled to your verdict. If you find that fact, you must then go one step further and you must go to the conversation between Mr. O'Rourke and Mr. Noble and determine whether Mr. O'Rourke, with intent to defraud Mr. Pettengill of the proceeds of that (*Kelton*) verdict, did not tell Mr. Noble of that agreement, and in fact told Mr. Noble that he, O'Rourke, was entitled to the whole amount."

The plaintiff excepted to this aspect of the charge, asserting that fraud was not essential to the plaintiff's right to recover. Counsel urged that the pleadings and the evidence entitled the plaintiff to a recovery in contract.

The record does not bear him out. The complaint is written in the context of fraud and conversion. And the plaintiff's demand for judgment is made "by reason of said fraudulent concealment and misrepresentation. . . ." The cause of the plaintiff's loss is alleged "as wholly due to the said false and fraudulent representations and fraudulent concealment by said O'Rourke."

■ The theory of the plaintiff's case was not contract. It was based on actual fraud and conversion arising from wilfully broken promises and deception. See *Jobidon* v. *Lussier*, 124 Vt. 242, 244, 204 A.2d 88 (1964) ; *Gramatan National Bank and Trust Company* v. *Beecher*, 121 Vt. 39, 46, 146 A.2d 246 (1958) ; *New England Acceptance Corp.* v. *Nichols*, 110 Vt. 478, 485, 8 A.2d 665 (1939).

The plaintiff's motion for a directed verdict was on the basis of tortious conduct. There was no request to charge on any other theory. Beyond that, the plaintiff failed to establish a right to recovery in contract.

■ We can find nothing in the record to indicate that the defendant ever authorized Mr. O'Rourke, or any member of his firm, to compromise its right of subrogation. In essence, the plaintiff's theory of his right to recover in contract adopts the premise that the defendant's attorney agreed to surrender its right to reimbursement from Kelton to the extent of $11,348.56 for the doubtful privilege of gambling on a recovery that might be much less, with little or no opportunity for advantage. Even if the jury awarded to the full extent of the plaintiff's *ad damnum* of $30,000, forty percent of that amount would barely exceed the amount specified in the loan agreements. While rights of subrogation may be relinquished, they are not to be surrendered or compromised without specific authority from the subrogee. See *Hall* v. *Windsor Savings Bank*, 97 Vt. 125, 137, 121 A. 582, 124 A. 593 (1923).

■■ It is also the well established rule, here and in other jurisdictions, that an attorney, without special authority, has no power to bind his client by a compromise agreement of less than the full amount due. *Granger* v. *Batchelder*, 54 Vt. 248, 249 (1881). There may be some exceptions created by emergency conditions not present in the case at hand. See also

*Sheffer* v. *Perkins & Company,* 83 Vt. 185, 188, 75 A. 6 (1910) ; 7 Am. Jur.2d Attorneys at Law § 126; 30 A.L.R.2d 945 § 2; 7 C.J.S. Attorney and Client § 105. Absent such authority, the record afforded no justification for submitting the case to the jury on any theory except tort.

This applies to the plaintiff's claim of error in the court's failure to permit the jury to base an award on implied contract. There was no pleading to this effect. Moreover, the law of restitution is based on the equitable principle that one shall not be allowed to unjustly enrich himself at the expense of another. Of course the evidence is undisputed that the proceeds of the *Kelton* recovery, which the defendant retained, do not reimburse the defendant for the amount it paid the plaintiff by way of settlement. On these facts, an instruction on the theory of implied contract would have been in error. Compare *Kinsley* v. *Willis,* 120 Vt. 103, 111, 132 A.2d 163 (1957).

██ ██ The plaintiff has briefed the point that the court erred in charging the jury to determine whether Mr. O'Rourke acted with fraudulent intent. The error was not claimed in the trial court, hence is not for consideration on appeal. In any event, the instruction was consistent with the complaint. And in the absence of an exception, it became the law of the trial. *Perkins* v. *Vermont Hydro-Electric Corporation,* 106 Vt. 367, 417, 177 A. 631 (1934). No error appears in the court's instruction.

Lastly, the plaintiff contends the judge, presiding at the trial, should have disqualified himself for reason of prejudice. Following conferences in chambers and ruling made preliminary to trial, plaintiff filed a motion requesting that the presiding judge disqualify himself from presiding during the trial of the case. The grounds of the motion are:

"1. Plaintiff from observation has learned and strongly feels that the Hon. Judge Hill is prejudicial in this matter.

2. At the trial Judge Hill would be prejudiced in his conduct of the trial and further the prejudice would become known to the jury hearing the case.

3. Trial under the circumstances would be unfair to plaintiff."

No statutory or constitutional disqualification is claimed, nor does the motion set forth any facts relied upon in support of the motion.

Whether the plaintiff's motion should have been granted presents an issue of fact. *State* v. *Jurras*, 97 Vt. 276, 280, 122 A. 589 (1923). In this instance, no affidavit was presented and no testimony was given in support of the motion. In support of the contention, the plaintiff merely refers to various portions of the transcript of the pretrial proceeding, as well as the record of the trial in chief.

■ The action, as originally instituted by Mr. Monti, joined the New Hampshire Insurance Company and Ryan, Smith and Carbine as parties defendant. When the case was first called for trial the presiding judge indicated much concern that some of the opposing counsel would be called upon to testify. The court immediately ordered the attorneys, who were expected to testify, to withdraw their appearances as counsel of record.

The role of an advocate and that of a witness are inconsistent. *In re Holden*, 110 Vt. 276, 277, 4 A.2d 882 (1939) ; Code of Professional Responsibility, American Bar Association, DR 5-102, EC 5-9 (approved Vt. Bar Association 1969). While we think the trial judge overextended his comments in making the ruling, there is no indication of bias or favor as to either litigant.

At the pretrial conference Judge Hill indicated he was well aware that Mr. Monti was an interested party, although not named as a plaintiff. Because of this knowledge, the plaintiff claims the court demonstrated prejudice by refusing at first to permit Mr. Monti to sit at the counsel table. The ruling was later retracted. We find no disqualifying bias in the order nor in its rescission.

Finally, in a late effort at compromise, the presiding judge called upon Mr. Monti to respond first "because you are the guy who wants the money."

Mr. Monti answered by saying: "So far as I am concerned, and I believe my client takes the same situation (sic). We offered at the very outset to strike off certain charges, and we have made our last and final offer." In this colloquy we find an unfortunate choice of words, but no demonstration of cause for disqualification.

The remaining points of bias advanced in the plaintiff's brief are directed at rulings made by the court in the conduct of the trial. Because of the gravity of the assertions we have examined the references to the record with careful attention to the claim.

█ Without further elaboration, the Court cites its earlier opinion by justice Moulton in *Leonard* v. *Willcox,* 101 Vt. 195, 215, 142 A. 762 (1928), to reaffirm that:

"(i)t is not enough merely to show previous adverse rulings, no matter how erroneous, or numerous (omitting citations) ; or merely to show a judge's expression of opinion, uttered in what he conceived to be the discharge of his judicial duty, based upon evidence produced before him."

The plaintiff's claims do not exceed these limits. No adverse interest against the plaintiff or his cause has been demonstrated. Indeed the rulings complained of have not been assigned as erroneous in law. At most, the record reflects an obvious concern on the part of the trial judge when confronted with the untoward duty of presiding at an internal conflict which erupted in the course of the dealings between members of the legal fraternity.

*Judgment affirmed.*