## In re John Campbell; Charles Brown; John Campbell Realty, Inc.

[536 A.2d 544]

No. 85-263

Present: Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned

Opinion Filed November 6, 1987

*Jeffrey L. Amestoy*, Attorney General, *Samuel E. Johnson*, Assistant Attorney General, and *Mary Ellen Donovan*, Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*Richard E. Davis* and *Carolyn Tonelli* of *Richard E. Davis Associates, Inc.*, Barre, for Defendants-Appellants.

**Peck, J.** John Campbell Realty, Inc., along with John Campbell (Campbell), its president, and Charles Brown (Brown), its principal broker, appeal an order of the Vermont Real Estate Commission revoking the real estate broker's license of all three appellants. The Commission found that Campbell and Brown had demonstrated untrustworthiness and bad faith within the meaning of 26 V.S.A. § 2296(a)(3) and (a)(8) in retaining escrow funds following the failure of a proposed sale of a farm and the tender of a settlement agreement concerning the escrowed deposit. We affirm.

The events at bar are complex, but the grounds for the revocation deal almost exclusively with the retention of escrow funds. On November 12, 1981, Madeleine and Edouard Emery signed an agreement with Edward and Gertrude Darby to purchase the Darbys' farm in Newport Center for $258,000, $11,500 of which was paid as a deposit. This deposit is the focus of the controversy. The Darbys, as sellers, were represented by John Campbell Realty, Inc. The attempted sale was by Charles Brown and John Campbell personally. The Emerys dealt principally with Campbell. The Emerys are citizens of France and farmers by profession; they do not read, write, speak or understand English. Pursuant to the contract of sale, the Emerys were entitled to the return of the $11,500 deposit if they were unable to obtain visas to immigrate to the United States.

According to their deposition, the Emerys sought permission from the French government to transfer their funds from France to the United States for purposes of buying the farm in late winter or early spring of 1982. Upon receiving permission to transfer the funds, the Emerys applied to the United States government for the required visas, which were refused. The Commission found that Campbell induced the Emerys to sign a new contract on April 15, 1982, by telling them that increased interest rates in the United States mandated that the Darbys raise the interest rate they were to charge the Emerys for the balance of the

purchase price. Although Campbell told the Emerys that the new contract would, in all other respects, be the same as the previous contract, the new contract included other less favorable terms with regard to the loan from the Darbys. Campbell failed to explain the new terms to the Emerys, never gave them a copy of the contract, and failed to inform them that additional changes had been made to the new contract.

On June 6, 1982, the Emerys attempted to enter the United States from Canada but were refused entry. During a three month sojourn in Canada, the Emerys borrowed $450 in Canadian currency from Campbell to cover their living expenses until they were able to withdraw funds deposited in a Vermont bank in contemplation of closing. When it became clear that they would not be able to enter the United States, the Emerys retained a Vermont attorney to represent them in this matter and authorized him to negotiate a settlement with respect to the $11,500 deposit. The Darbys also retained counsel and authorized him to negotiate a settlement of the escrowed deposit. The Board found that the authorizations of both attorneys were known to all parties, including Campbell and Brown.

Campbell asked the Darbys' attorney to write a letter to Charles Brown and Campbell Realty, Inc. to provide them with a legal basis to continue to hold the escrow funds. The attorney wrote the requested letter, as follows:

> I am of the opinion that the Emerys have failed to live up to their agreement to obtain the necessary visas and documents to enter this country . . . .
>
> Therefore the Darbys are ordering you and John Campbell Realty, Inc. to not release the escrow account worth approximately $11,500. It is my opinion that this amount will be retained by the Darbys and a division with your firm can be determined at some later date.

At the hearing Mr. Darby testified that he was unable to specify what actions, if any, the Emerys had taken to cause the visas to be denied. The Commission found that there was no factual basis for the contention that the Emerys had failed to live up to their obligation to seek immigration papers.

The attorneys continued settlement negotiations from July 13, 1982 through February 16, 1983, each attorney retaining full

power to speak for his respective clients. On February 1, 1983, the attorneys reached an oral settlement which was memorialized in a memorandum of settlement agreement pursuant to which the buyers and sellers released each other from liability and dispatched a "Notice of Cancellation to Escrow Agent by Mutual Consent" which directed the John Campbell Realty, Inc. to disburse the escrowed funds, $1,000 to Darbys, $10,500 to Emerys.

After execution of these documents, Darby informed Campbell, who was a close friend, that he did not agree with the terms of the settlement. On February 16, 1983, Campbell telephoned the Emerys' attorney to inform him that the escrow funds would not be released despite Campbell's receipt of the notice of cancellation because it was signed by the attorneys, rather than their clients, and did not contain a general release to Campbell or his office as escrow agents. Thereafter, the Emerys' attorney obtained his clients' signatures on a document entitled "Instructions and Release to Escrow Agent," releasing Campbell and John Campbell Realty, Inc. from all liability arising from the cancellation of the escrow agreement and the disbursement of the escrow funds, but not releasing either Campbell or Campbell Realty, Inc. from liability arising out of any other matters connected with the proposed transaction.

On March 15, 1983, Campbell again telephoned the Emerys' attorney telling him that he still would not honor the instructions. Campbell stated he doubted that the signatures were those of the clients, despite what appeared to be adequate witnessing in France and an official French stamp. The proceeding below followed.

Though its findings detailed many of the foregoing events, the Board based its conclusions on the improper handling of the escrow account by respondents. The Commission found that Campbell "actively fomented the dispute between buyer and seller, [and that] he did so under the motivation of potential personal financial gain from the very escrowed monies which were the subject of his trust." The Commission concluded that the memorandum of settlement was valid and binding on the Darbys and Emerys, notwithstanding the fact that it was signed by the attorneys rather than the parties. The Commission concluded that failure to disburse the escrowed funds immediately upon delivery of the notice of cancellation "demonstrates bad faith and untrustworthiness in his [Campbell's] capacity as a real estate broker

such as are proscribed by 26 V.S.A. § 2296(a)(3) and (8)." While the Commission found that the principal actor was Campbell, it also found that Brown, who operated under Campbell's direction, engaged in professional misconduct "sufficient to justify the revocation of his Vermont real estate broker's license." The Commission ordered revocation of the licenses of Campbell, Brown, and Campbell Realty, Inc. This appeal followed.

Respondents argue that the findings below were not supported by the evidence properly introduced before the Commission and contend specifically that a September 3, 1982 deposition of the Emerys, at which an attorney for John Campbell was present as well as Charles Brown on behalf of Campbell Realty, Inc., should not have been considered by the Commission, since it was never introduced into evidence. The State responds that the Commission specifically noted in its decision that "[t]he result reached by the Commission is reinforced but not changed by the evidence contained [in the deposition]."

Where it is argued that evidence was improperly considered, respondents must not only show that there was error in the admission of the evidence, but "[t]he burden is upon him to also show that the admission in error was to his prejudice. The test is whether in the circumstances of the particular case it sufficiently appears that the rights of the complaining party have been injuriously affected by the error." *Towle* v. *St. Albans Publishing Co.*, 122 Vt. 134, 139, 165 A.2d 363, 367 (1960) (citations omitted). See *In re M. B., L. B. & G. B.*, 147 Vt. 41, 44, 509 A.2d 1014, 1016 (1986) ("Reversal is required only where the error complained of results in undue prejudice, not where it is harmless.") (citation omitted).

Respondents in their brief set forth the particular findings they assert were improperly based on the deposition, but they fail to indicate how the particular findings, even if traced to the deposition, contributed to a prejudicial result. Many of the findings deal only with undisputed background facts. Others concern events not connected with the escrow agreement and which are not part of the basis of the Commission's opinion. To the extent the deposition recited actions by Campbell which might have reflected questionable practices, those references are incidental and are not essential to the Commission's conclusions. We have held that "[u]nessential findings, even if incorrect, are not grounds for reversal." *Greenberg* v. *Hadwen*, 145 Vt. 112, 115, 484 A.2d 916, 918

(1984) (citing *Latchis* v. *State Highway Board*, 120 Vt. 120, 126, 134 A.2d 191, 195 (1957)).

■ The remainder of the challenged findings are of contested facts. However, the Commission did not base these findings solely on the deposition in question. Rather, the Commission based its determinations on other properly admitted evidence, and the deposition was merely cumulative evidence. Where evidence admitted in error is cumulative to evidence which is properly considered, the error is harmless. *Baldwin* v. *State*, 126 Vt. 70, 77, 223 A.2d 556, 561 (1966) (citing *Towle* v. *St. Albans Publishing Co.*, 122 Vt. at 140, 165 A.2d at 367).

■ We conclude from our independent review that there was no prejudice from consideration of the deposition, even if such consideration was error. Furthermore, in Vermont "an administrative body's ruling is entitled to a strong presumption of validity. We will not disturb their findings if there is any evidence in the record to support them." *In re Desautels Real Estate, Inc.*, 142 Vt. 326, 336, 457 A.2d 1361, 1366 (1982) (citations omitted). We have reviewed the record and conclude that there is ample evidence to support the Commission's findings. Accordingly, we affirm on these bases.

The Commission found that Campbell violated 26 V.S.A. § 2296 by engaging in dishonest fraudulent dealings for personal gain by violating his duty as escrow agent to release the escrow funds. Respondents argue that no duty was violated since the Darbys' attorney did not in fact possess authority to settle the dispute over the escrow and that respondents were therefore justified in declining to respond to the settlement agreement dated February 1, 1983. The Commission found, however, that the Darbys had authorized their attorney to settle the dispute and that respondents were notified of this.

■ Respondents are correct that attorneys in Vermont lack inherent authority to compromise or settle a case and may not act beyond the scope of specific authority to do so, *Pettengill* v. *New Hampshire Insurance Co.*, 129 Vt. 23, 30, 270 A.2d 883, 888 (1970), but even if the Darbys' attorney had acted beyond the scope of his authority, competent evidence was sufficient to permit the Commission to conclude that Campbell intentionally and purposefully retained the escrow funds for his own benefit in violation of § 2296. The Commission specifically found that Campbell induced Darby, a friend of long standing, to continue his dis-

pute with the Emerys. It also found, as noted above, that Campbell had asked the Darbys' attorney to write a letter establishing some basis for retaining the escrow. It was abundantly clear from the record below that no such grounds existed but that Campbell had created the dispute between the Darbys and the Emerys. The Commission carefully examined all of the evidence that Campbell retained the escrow funds in clear violation of his fiduciary duty as a trustee, and we cannot say that upon scrutiny of the record such findings and conclusions were erroneous.

*Affirmed.*