GEORGIA MANCINI *v.* LEONARD THOMAS AND LIBERTY MUTUAL INS. CO.

May Term, 1943.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 5, 1943.

*Finn and Monti* for the plaintiff.

*Wilson and Keyser* for defendant, Thomas.

*McNamara & Larrow* for defendant, Liberty Mutual Ins. Co.

STURTEVANT, J. This is a suit in chancery and was tried below together with four other cases, each against the same defendants. The numbers of and the plaintiffs in those cases respectively are as follows: 1076, Ada Pucci; 1082, Mrs. Alexander Farnidoni; 1083, Josephine Storti; and 1084, Joy Arioli, b.n.f. All of these cases arose out of the same automobile accident and are brought because the defendant insurance company, hereinafter referred to as the company, refuses to pay judgments which the various plaintiffs have obtained against the defendant Thomas. The plaintiff in each case brought a bill in chancery and in each the defendant Thomas answered and filed a cross bill, the company answered both the bill and cross bill and also in each case the plaintiff and the defendant Thomas filed replications. Hearing was had, findings of fact filed and in each case a decree was entered dismissing the bill and cross bill and allowing costs to the defendant company. Various exceptions were saved by the plaintiffs and the defendant Thomas including exceptions to the decree as entered, it being contended by them that on the facts as found, a decree in each case should have been entered for the plaintiff. The facts found by the chancellor are as follows:

1. The plaintiffs are all residents of Barre, Vermont, who were injured on August 18, 1941, while riding in an automobile which was in collision with another automobile then being driven by the defendant Thomas.

2. Thomas was then owner and operator of an automobile repair shop at East Randolph, Vermont. On the previous day a man named Bourque, the owner of a Dodge automobile brought it to the defendant Thomas' garage because the radiator was heating. Thomas told Bourque he was too busy to work on Bourque's automobile that day and if it became necessary to blow out the radiator he was not equipped to make the necessary repairs. He furnished Bourque a can of water so Bourque could refill his radiator on the way to Barre.

3. Bourque started for Barre but soon returned to the Thomas garage, told Thomas he had decided to leave his automobile with Thomas, for Thomas to repair the next day and instructed Thomas to fix it or have it fixed, and to test it afterwards on a certain hill leading to Graniteville.

4. The next day Thomas found it necessary to have Bourque's automobile repaired in a Barre garage, did so, and tested it on the Graniteville hill as instructed by Bourque, and while driving back toward the Barre garage collided with the automobile in which the plaintiffs were riding and injured them.

5. At the time of the accident Bourque's automobile was insured by the defendant Company. Two of the plaintiffs sued Thomas through Finn & Monti of Barre, Vermont, in Washington County Court, and Thomas immediately employed Ray Keyser as his attorney.

6. Keyser soon notified the defendant insurance company about the suits and the company sent at least two different adjusters to investigate the accident. One of them told Thomas he need not worry, that the insurance company would take care of the matter. Each of the adjusters interviewed Attorney Finn at various times and one of them told Finn that the policy covered the accident in question.

7. On or about February 3, 1942, one R. E. Coughlin, an adjustor of the defendant insurance company, interviewed attorney Finn and asked him for settlement figures. Finn was unable to give them as plaintiff Mrs. Pucci was not sufficiently recovered, but offered to allow the insurance company to have any or all of the claimants examined, and instructed the plaintiff's doctor to give the insurance company any reports that the company might request.

8. Coughlin reported to the defendant company that since Finn was not in position to submit a settlement figure Coughlin did not see any necessity of denying the claims on that trip, but that he had taken advantage of getting reports from the plaintiff's doctor. He

also reported to his company that after these doctor's reports were received and another month given Mrs. Pucci then he believed the defendant company should get settlement figures from Finn and at that time deny.

9. The company adopted that procedure. Attorney Keyser wrote them on February 19, 1942, and again on February 24, 1942, stating that the two cases which had been brought in County Court were coming for hearing at the next term of Court, beginning March 3, 1942, and asking what the situation was regarding them.

10. On March 3, 1942, the defendant Company asked Keyser to obtain settlement figures from Finn, which Keyser did, informed the insurance company on or about March 9, 1942, and asked that the company let him hear right away.

Not having heard, on March 17, 1942, Keyser wrote the insurance company that jury trials would commence March 23, that it did not look to him as though there was much to defend the cases on, and asking that the insurance company let him hear right away.

11. On March 25, 1942, Keyser received a letter from the defendant company stating that they were hastening to convey their thoughts to him promptly and in that letter for the first time notified Keyser that the company considered their assured was in no way involved and that company's policy extended no protection whatever to defendant Thomas.

12. Keyser as defendant Thomas' attorney, immediately notified the defendant company demanding that it defend and pay any judgment rendered against Thomas and told the Company the day and hour of trial.

13. The defendant company again wrote Keyser on March 27, 1942, disclaiming coverage. Keyser then stipulated for judgment for the plaintiffs; he and Thomas were present when trial was had but made no defense and the jury assessed damages. On March 30, 1942, plaintiff Mancini obtained judgment vs. Thomas in Washington County Court for $1525.00 damages and $28.84 costs, with $.50 additional for the execution and $4.40 officer's fees thereon. On the same day plaintiff Pucci obtained a similar judgment for $1825.00 damages, $34.84 costs, $.50 execution and $4.40 officer's fees.

14. On May 29, 1942, plaintiffs Farnidoni, Storti, and Arioli sued Thomas in Barre Municipal Court. On June 8 Keyser sent the writs to defendant insurance company demanding protection, otherwise Thomas would feel at liberty to make whatever dispo-

sition he saw fit. On June 12 the insurance company returned the writs to Keyser, stating it was repeating the information contained in its letters to Keyser of March 22 and March 27 and further stated that the company did not insure Thomas and that the insurance company was in no way responsible for defending the actions against him and disclaimed all liability.

15. Keyser entered appearance for Thomas in the Municipal Court cases but neither he nor Thomas appeared for trial and after hearing on June 16, 1942, plaintiff Farnidoni obtained judgment for $335.00 damages, $17.68 costs, and $8.00 costs on the execution. On the same day plaintiff Storti obtained judgment for $350.00 damages, $17.68 costs and $8.00 costs on the execution and plaintiff Arioli obtained judgment for $445.00 damages, $19.18 costs and $8.00 costs on the execution.

16. The insurance policy in question defines insured to include any person while using the motor vehicle, provided the actual use is with the permission of the named insured, but that it does not apply to any person operating an automobile repair shop or public garage with respect to any accident arising out of the operation thereof. The policy also states that "No notice to any agent, or knowledge by any agent or by any other person shall be held to effect a waiver or change in any part of this policy nor estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by the President, a vice President, Secretary, or Assistant Secretary of the Company."

17. There is no evidence in the case that the adjustor had authority, either express or implied, to tell Thomas that the insurance company would take care of the matter or to tell Finn that the policy in question covered the accident. Nor is there any evidence that the insurance company ever had knowledge of these statements or ever assented to them. I therefore find that the plaintiffs have failed to sustain the burden of proof.

18. Defendant Thomas had no means or property with which to settle the plaintiffs' claims or pay their judgments. I find that neither the plaintiffs nor Thomas were induced to put themselves in a prejudicial position because of the statements made by the adjustor to Thomas and Finn or by any act of the defendant insurance company.

19. I find that the defendant insurance company's policy does not cover the accident in question here and that the company is not liable to either the plaintiffs or to defendant Thomas.

20. All of the exhibits in the case are referred to and made a part of these findings, and the transcript of the evidence, if furnished, is made a part of these findings, all for the purpose of testing whether the findings are warranted by the evidence, and for the purpose of reviewing questions saved by exceptions at the hearing.

Additional Findings of Fact

1. Defendant, Thomas, on September 4, 1942, when defendant's adjustor, Rawcliffe, informed Thomas that he need not worry about the accident and that the insurance company would take care of the matter, did not know of the exclusion provisions of paragraph III of the Bourque policy and had no information of such exclusion provision until this provision was pleaded in this cause, but was advised by Plff's. Ex. 5, dated March 21, 1942, that the defendant insurer then took the position that there was no protection of Thomas under the Bourque policy.

2. Defendant, Insurance Company, at all times herein material was licensed and authorized to do business as a liability insurance company in the State of Vermont.

The appellants contend that from the foregoing facts it should be held as a matter of law that the insurance company has waived the policy provision mentioned in finding No. 16, which in effect states that the word insured as used in the policy excludes therefrom any person operating an automobile repair shop or public garage with respect to any accident arising out of the operation thereof. It is also contended that it appears from the findings that the insurance company is estopped from now claiming any benefit from such provision in the policy.

■ "Waiver" and "estoppel", as applied to contracts of insurance, are terms which are interchangeably used, and in each case the meaning and result are the same. Yet they are in their elements essentially different. "A waiver involves the act or conduct of one of the parties to the contract, only. An estoppel involves the act or conduct of both parties to the contract ********. A waiver is the intentional relinquishment of a known right ***. It involves both knowledge and intent. An estoppel may arise where there is no intent to mislead. A waiver does not necessarily imply that one has been misled to his prejudice or into an altered position ****. An estoppel always involves this element. A waiver may amount to an estoppel, but not necessarily so." *Beatty v. Employers' Liability Assurance Corporation, Ltd.,* 106 Vt 25,

31, 168 A 919, 922, and cases cited. The doctrine of waiver is to relieve against forfeiture. However the policy provision with which we are here concerned is not a condition, the breach of which works any forfeiture. It is simply an exception from the risk insured against. Beatty case, *supra,* 106 Vt at page 32, 168 A 919. It follows that if upon the findings as made the plaintiff is entitled to a decree in this case it must appear therefrom, not that the defendant insurance company waived the breach of a condition of the policy, but that in some way the obligation of the insurance company was extended so as to include coverage to Thomas at the time and place of the accident in question. The plaintiffs contend that the findings show this has been done.

■ The chancellor failed to make specific findings of material facts shown by the exhibits such as the time when the company first had notice and full information of the circumstances under which Thomas was driving the Bourque car at the time of the accident. He also failed to set out in the findings certain material provisions of the policy in question. These facts shown by the exhibits are made a part of the findings only by reference. This is not sufficient to bring such facts before us as the findings can not be supplemented in this manner. *Bardwell et al.* v. *Commercial Union Assurance Co., Ltd.,* 105 Vt 106, 111, 163 A 633, and cases cited.

From the findings it appears that two persons injured in the accident each brought a county court action against Thomas who retained Keyser as his attorney. Keyser immediately gave the company notice of these suits. The company sent at least two adjustors to investigate the accident. One of the adjustors interviewed Thomas on September 4th, 1941. At that time Thomas did not know of the exclusion provision of the policy and he first learned of it when it was pleaded by the company in defense of this suit. On February 3, 1942, one R. E. Coughlin, an adjustor for the company, interviewed the plaintiffs' attorney and asked for settlement figures. The attorney could not give those figures at that time but offered to allow the company to have any or all of the claimants examined and instructed the plaintiffs' doctor to give the company any reports it might request. Coughlin reported to the company that since the attorney was not in position to give a settlement figure Coughlin did not see any necessity of denying the

claims on that trip, but that he had taken advantage of getting reports from the plaintiffs' doctor. He also reported to his company that a month after these reports were received he believed that the company should then get settlement figures from the plaintiffs' attorney and then deny the claims. The company adopted that procedure. On February 19, 1942, and again on February 24, 1942, attorney Keyser wrote the company stating that the two county court cases would come on for hearing at the March term which opened March 3, 1942, and asked what the situation was regarding them. On the opening day of court the company asked Keyser to obtain settlement figures from the plaintiffs' attorney. Keyser did this and sent the figures to the company within a week and asked it to let him hear right away. Receiving no reply, on March 17, 1942, Keyser wrote the company that jury trials would commence on the 23 inst. that it did not look to him as though there was much to defend the cases on and asked that the company let him hear right away. Eight days later, on March 25, Keyser received a letter from the company stating that they were hastening to convey their thoughts to him promptly and in that letter for the first time stated to Keyser that the company considered their assured was in no way involved and that the policy in question extended no protection whatever to the defendant Thomas. Keyser as attorney for Thomas immediately wrote the company demanding that it defend the suits and pay any judgment rendered against Thomas and notified the company of the day and hour of trial. The company four days later wrote Keyser again disclaiming coverage. Keyser then stipulated for judgments for the plaintiffs and the jury assessed damages.

When the company learned that Thomas operated a garage and the circumstances under which he was driving the Bourque car at the time of the accident three courses of action were open to it. Within a reasonable time it could deny liability to Thomas, or if doubtful as to its position under the policy it could take over the defense of the suits under some arrangement with Thomas that by so doing it was not prejudicing its rights under the policy provisions or it could take over the defense of the actions without reservation. *Bardwell et al.* v. *Commercial Union Assurance Co. Ltd.* 105 Vt 106, 117, 163 A 633. Its failure to deny liability to Thomas within a reasonable time and its repeated efforts

to obtain settlement figures, acceptance of the doctor's reports, asking the attorney for Thomas to get settlement figures and accepting this information from him all while in possession of facts upon which it intended to deny liability, as appears from the aforementioned Coughlin letter, constituted conduct on the part of the company inconsistent with the claim made on the eve of the trial of the county court cases and more than six months after it had received notice of those suits. Had the company denied liability with reasonable promptness Thomas could have then placed the facts as to his financial position before the plaintiffs and they could have conducted negotiations before the time arrived for the trial of county court actions, and in the light of the facts as they were. While Thomas had no property with which to settle the cases yet if they went to judgment, since he had no defense on the merits, he could reasonably expect that certified executions would issue in accordance with the provisions of P. L. 2195. The rights of Thomas here are not measured by his possession of wealth or the lack of it. The deceitful conduct of the company could have but one effect, namely, to induce Thomas and the plaintiffs to understand that it was assuming the defense of the cases and therefore to deprive Thomas of his right seasonably to negotiate with the persons injured in the light of the facts as to the property available for the payment of the claims. It follows that the company can not now be permitted to say that its conduct has not injured Thomas. The principle that controls here is the same as where an insurance company without objection takes over the conduct of a trial and after verdict attempts to contend that the policy in question does not cover the risk. In such cases the controlling factors are the inconsistent positions taken by the company and prejudice of the defendant's rights by its conduct. *Beatty* v. *Employers' Liability Assurance Corp., Ltd.*, 106 Vt 25, 36, 168 A 919; *Humes Construction Co.* v. *Philadelphia Casualty Co.*, 32 RI 246, 79 A 1, 2, 3, Ann Cas 1912 D 906; *Glens Falls Portland Cement Co.* v. *Travelers' Ins. Co.*, 162 NY 399, 56 NE 897; *Davis* v. *Wakelee*, 156 US 680, 15 S Ct 555, 39 L Ed 578; *Gerka* v. *Fidelity Insurance Co.*, 251 NY 51, 167 NE 169.

The cases cited by the company on this question are not inconsistent with the conclusions we have reached.

█ Because of what the chancellor has stated in finding No. 17, we have given no consideration to statements made by some of

the adjustors to the effect that the policy covered the liability of Thomas as to the accident. The statement in finding 18 asserting that neither the plaintiffs nor Thomas were induced to put themselves in a prejudicial position by any act of the company is a conclusion of law based upon other facts found. Being inconsistent with such specific findings we disregard it. *Preston* v. *Montgomery Ward & Company, Inc.,* 112 Vt 295, 297, 23 A2d 534; *Dieter* v. *Scott,* 110 Vt 376, 383, 9 A2d 1, and cases cited; *Nolan* v. *R. R. Co.,* 70 Conn 159, 39 A 115, 43 LRA 305. For the same reason we disregard the 19th finding holding that the company is not liable to either the plaintiffs or to Thomas.

It appears from the findings that the company was authorized and licensed to do business as a liability insurance company in this State at all times material here and that at the time of the accident the Bourque car was insured by the defendant company. It necessarily follows in accordance with the provisions of P. L. 7085 to 7087 both inclusive that the company is bound to protect Thomas against the levy of execution in any of these cases and must pay to each plaintiff the amount necessary to satisfy his judgment, costs, including costs on execution and interest thereon not exceeding the limits of liability as specified in the policy, and this regardless of the ability of Thomas to satisfy same, and regardless of the exclusion clause in the policy because as we have seen the company is estopped from claiming any benefit from such clause.

The company now claims that it should not be required to pay the judgments because no one of them was rendered after a trial on the merits. There is no finding indicating that the liability of the company in any way depends on such trial and even if the chancellor had so found the company would not be aided thereby. It had ample notice of the time and place when and where each case would be heard and refused to be present at or to take part in any of those hearings. It follows that the company now is not in a position to complain as to the judgments rendered. In view of the conclusions herein reached it is not necessary to consider other exceptions briefed by the plaintiffs and by the defendant Thomas.

The findings do not state the limits of liability as fixed by the policy and for this reason it is necessary to remand the case.

*Decree reversed and cause remanded with direction that a decree be entered for the plaintiff in accordance with the views herein expressed.*