## Armando Lopez v. Concord General Mutual Insurance Group

[583 A.2d 602]

No. 88-609

Present: **Peck, Dooley and Morse, JJ.**

Opinion Filed October 19, 1990

*John L. Kellner* of *Langrock Sperry Parker & Wool*, Middlebury, for Plaintiff-Appellee.

*John H. Tarlow* and *Christopher Roy,* Law Clerk (On the Brief), of *Downs Rachlin & Martin*, Burlington, for Defendant-Appellant.

**Dooley, J.** Defendant, Concord General Mutual Insurance Group, appeals from an order in a declaratory judgment action granting a motion for summary judgment filed by plaintiff, Armando Lopez, and denying defendant's motion. Defendant raises two issues: (1) that the trial court erred in holding that Concord had waived its right to collect its subrogated interest from a settlement fund, and (2) that if there was no waiver, then it should not be obligated to pay a portion of plaintiff's attorney's fees. Because we find that summary judgment was inappropriate in this case, we reverse and remand.

On February 8, 1985, plaintiff was injured when his automobile collided with a vehicle owned by Ryder Truck Rental (Ryder). Plaintiff's insurance company, Concord, paid $4,244.46 for medical expenses incurred from the accident. Pursuant to its policy with plaintiff, Concord had a subrogation right to that amount. The proof-of-claim forms signed by plaintiff provided: "I (we) hereby subrogate the said Company to all rights and causes of action I (we) have against any person, persons or cor-

poration whomsoever for the above listed claim for services arising out of or incident to said accident." Defendant informed plaintiff's attorney of its subrogated interest, requesting that "[w]hen you settle the claim with the adverse party, would you kindly keep our claim in mind." Subsequently, plaintiff filed a personal injury action against Ryder in Addison Superior Court.[1] Plaintiff's attorney notified defendant of the pending action and asked defendant to recognize his contingency fee arrangement in the event of a recovery. In response, defendant wrote to plaintiff's attorney, stating that

> We are dealing directly with Ryder . . . . We do not want you to handle our subrogation claim. We are dealing direct with them and expect that when the claim is eventually settled, they will reimburse us directly by separate payment. So, you will be representing only Mr. Lopez in this matter.

Defendant sent a copy of this letter to Ryder, along with a request that any payments for the subrogated medical claims be made directly to defendant. In fact, in the letter sending Ryder proof of the last of the payments to plaintiff, defendant's claims manager states: "we would hope that you would send your draft in [the total] amount direct to us without putting the insureds attorney or the insureds name on it."

Ryder answered plaintiff's suit denying liability. Without defendant's assistance or authorization, plaintiff's attorney engaged in extensive pretrial discovery, prepared the case for trial, drew a jury, and began trial against Ryder. During the trial, plaintiff's attorney negotiated a $38,000.00 settlement with Ryder. There was no mention of defendant's subrogation claim during the settlement discussions. Ryder's attorney gave no indication that defendant's subrogated claim was included in the $38,000.00 sum. In connection with this settlement, plaintiff's attorney instructed plaintiff to sign a general release, releasing Ryder from all claims of the plaintiff. This release was given without defendant's consent, ostensibly in contravention

---

[1] While the record does not contain a copy of plaintiff's complaint against Ryder, it appears that plaintiff sued for all personal injury and property damages without excluding the medical expenses reimbursed by defendant.

of written agreements between defendant and plaintiff.[2] Without the agreement of plaintiff or his attorney, and without any prior discussion, Ryder sent two separate checks to satisfy its settlement agreement. One check was made out to plaintiff and plaintiff's attorney, in the amount of $33,375.54. The second check, made out to defendant, plaintiff, and plaintiff's attorney, was in the amount of $4,244.46 —the exact sum of the subrogated medical payments. Plaintiff's attorney objected to Ryder's unilateral deduction of this sum from the $38,000.00 settlement, on the ground that the $38,000.00 figure as negotiated by plaintiff's attorney and Ryder's attorney was not intended to include defendant's subrogation claim. Both plaintiff and defendant claimed entitlement to the $4,244.46 check. Defendant also rejected the demand of plaintiff's attorney for a one-third share of the check should defendant be entitled to it.

Plaintiff filed a declaratory judgment action against defendant to determine the proper distribution of the $4,244.46. Ryder was not made a party to the action. The parties agreed on a stipulation of facts and then each filed a motion for summary judgment with an affidavit. Plaintiff's affidavit was of his attorney and described his dealings with defendant's claims adjuster and the attorney for Ryder. Defendant's affidavit was of the claims adjuster and described his dealings with Ryder and plaintiff's attorney. The trial court granted plaintiff's motion and denied that of the defendant. Defendant appeals, asserting first that it was error to grant plaintiff's motion and deny its motion.

Defendant's primary claim is that the lower court erred in holding that defendant waived its right to collect its subrogation claim from the proceeds of the settlement. Resolution of this claim involves two separate inquiries: (1) whether defendant effectively waived its right to reimbursement from plaintiff's recovery; and (2) if so, whether the waiver covers the three-party check sent by Ryder.

---

[2] The medical payment proof-of-claim form, quoted in part earlier, also provided in pertinent part: "I (we) hereby covenant that no release has been or will be given to or settlement or compromise made with any third party who may be liable to me (us) for the above claim for services arising out of or incident to said accident."

■    Before addressing the questions, we begin by examining the summary judgment standard here and in the trial court. The trial court can grant summary judgment only if it clearly finds from the materials before it that there is no genuine issue as to any material fact and that the moving party is entitled to judgment on the law. V.R.C.P. 56(c); *Messier v. Metropolitan Life Ins. Co.*, 154 Vt. 406, 409, 578 A.2d 98, 99 (1990). In this process, the opponent to the motion must be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue exists. *Weisburgh v. Mahady*, 147 Vt. 70, 72, 511 A.2d 304, 305 (1986). While a stipulation of facts often allows the trial court to decide a case on summary judgment, it is not always so. If the stipulation is inadequate to demonstrate whether any party is correct as a matter of law, summary judgment cannot be awarded. See *Ejnes v. Carinthia Trailside Assocs.*, 153 Vt. 355, 358, 571 A.2d 49, 51 (1989). Finally, the standard on appeal is the same as that in the trial court. See *Messier v. Metropolitan Life Ins. Co.*, 154 Vt. at 409, 578 A.2d at 99. With the requirements for granting summary judgment in mind, we review the law applicable to the parties' actions.

■■    A waiver is the voluntary, intentional relinquishment of a known right. *Segalla v. United States Fire Ins. Co.*, 135 Vt. 185, 189, 373 A.2d 535, 538 (1977); *Liberty Mutual Ins. Co. v. Cleveland*, 127 Vt. 99, 103, 241 A.2d 60, 63 (1968). "It involves both knowledge and intent." *Liberty Mutual*, 127 Vt. at 103, 241 A.2d at 63 (quoting *Mancini v. Thomas*, 113 Vt. 322, 327, 34 A.2d 105, 109 (1943)). An insurer's subrogation rights may be lost by waiver or estoppel. See *Pettengill v. New Hampshire Ins. Co.*, 129 Vt. 23, 30, 270 A.2d 883, 888 (1970). The right of subrogation, however, has "particular approval" under our law. *Norfolk & Dedham Fire Ins. Co. v. Aetna Casualty & Surety Co.*, 132 Vt. 341, 343, 318 A.2d 659, 661 (1974). Indeed, a subrogation provision is required in each liability policy in this state. 8 V.S.A. § 4203(4). We conclude that a waiver of a subrogation right will be found only where the subrogated party has specifically and unequivocally relinquished that right.

■    Here, defendant's letters to plaintiff, plaintiff's attorney, and Ryder established its unequivocal intention to pursue independently its subrogation claim. Confident that Ryder's lia-

bility and damages were never in dispute, defendant informed plaintiff's attorney it would "deal directly" with Ryder, declining to assist or participate in plaintiff's legal action. Defendant notified Ryder on at least two occasions that it would handle directly any settlement arrangements regarding its subrogated interest. Although defendant was aware that plaintiff had commenced suit, it did not join or bring an independent action. See V.R.C.P. 17(a) (subrogated insurance carrier can bring suit in its own name). In short, all evidence in the record supports the trial court's conclusion that defendant unequivocally and intentionally waived its right to reimbursement from the proceeds of plaintiff's action against Ryder, and the trial court was correct to grant summary judgment to that extent.

If the issue here were the right of the insurer to participate in settlement proceeds provided by the tortfeasor solely to the insured, our finding of waiver would require a judgment for the plaintiff. The facts here are more complicated, however, because Ryder attempted to provide part of the settlement proceeds to both plaintiff and defendant, without choosing between them. To determine the significance of this act, we first examine whether defendant had any enforceable rights against Ryder that might give it an interest in the payment.

In the leading case of *Cushman & Rankin Co. v. Boston & Maine Railroad*, 82 Vt. 390, 396–97, 73 A. 1073, 1075 (1909), this Court held that a release given by an insured to a tortfeasor does not bar a separate action by an insurer to enforce its subrogated rights against the tortfeasor when the tortfeasor had prior knowledge of the insurance payments from the insurer to the insured. The *Cushman* rule is undercut to some extent, however, by the procedural barrier to the insurer's recovery established by *Moultroup v. Gorham*, 113 Vt. 317, 321, 34 A.2d 96, 98 (1943). In *Moultroup*, the subrogated insurance carrier sued in the name of the insured for property damages arising out of an automobile accident. The tortfeasor defended, arguing that a prior personal injury judgment obtained by the insured in her own behalf precluded the second suit for property damages. This Court agreed, concluding that the second suit violated the rule against splitting a cause of action and thus was precluded by res judicata. The fact that the second suit was commenced by the insurer was not determina-

tive: "If others claim a right to stand in place of the injured party, they must intervene in proper time, or lose their recourse to the wrongdoer." *Id.* Thus, the "insurer's right of recovery was limited to a right to intervene in the first suit and there insist that a recovery be had for damage to the car." *Id.*

■ *Moultroup* was decided at a time when our procedural rules offered less flexibility to existing parties to add other parties and to add claims other than those framed in the original pleadings. We concur with the evaluation of Wright and Miller: "Partial assignment and subrogation provide compelling justification for splitting a single claim. The basic questions in this area have been answered primarily through the modern rules on party joinder." 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4415, at 122 (1981). Certainly if Ryder were concerned about multiplicity of litigation, it could have joined defendant into plaintiff's suit against Ryder.

In any event, *Moultroup* applied only when the insurer was bringing an action in the name of the insured. Thus, when we adopted the Vermont Rules of Civil Procedure, we established a notice requirement whereby an insurer must notify the insured before bringing a subrogation action in the name of the insured. V.R.C.P. 17(c). The Reporter's Notes indicate that the rule "eliminates the danger that a subrogation action brought in the assured's name may preclude an assured's personal injury claim." Reporter's Notes to V.R.C.P. 17. The rule does not have a similar requirement that the insured notify the insurer of his or her intent to commence suit. The notes explain: "Similar protection is not required for the insurer, which may sue for property damage in its own name as real party in interest even after a judgment for the assured on the personal injury claim." *Id.*

■ Although defendant may have been required to bring suit against Ryder in its own name, a question we need not decide, it retained a cause of action against Ryder even though it did not join plaintiff's action against Ryder. In fact, plaintiff alleged in a memorandum filed below that defendant had actually sued Ryder in an independent action in superior court.

In light of this background, it is clear that Ryder was attempting to discharge all the claims against it with one payment and without choosing between the conflicting claimants. This

leaves plaintiff arguing that the three-party check is required to go to him under his agreement with Ryder and defendant arguing that the check discharges its claim against Ryder. Without Ryder before us, and without additional facts to show the terms of plaintiff's settlement agreement with Ryder, we are unable to adjudicate the relative claims of plaintiff and defendant. It is entirely possible that both plaintiff and defendant are entitled to collect from Ryder the sum covered by the three-party check and that neither has a prior claim to the other.

For the above reasons, we conclude that defendant's waiver of its right to collect from the proceeds of plaintiff's action does not determine its rights in the three-party check sent by Ryder. Accordingly, it was error to grant summary judgment for plaintiff.

*Reversed and remanded.*