BURLINGTON, VT, CITY OF; Lloyd's London Underwriters Similarly Situated Subscribing to Airport Owners' and Operators' Liability Insurance Policy No. ISL 3890 and Particularly Designated by Respective Syndicate Nos. 800, 960, 998, 53, 48, 117, 270, 97, 619, 814, 738, 1,054, 545, 295, 402, 312, 331, 310, 850, 256, 448, 925 and 581, Underwriters listed individually as Aviation and General Insurance Company Limited; Prudential Assurance Company Limited; Pearl Assurance Company Limited, per Aviation and General Insurance Group; Phoenix Assurance Company Limited; Guardian Royal Exchange Assurance Group; Norwich Union Fire Insurance Society Limited, per London Aviation Insurance Group; London Aviation Insurance Group Comprising 100% Phoenix Assurance Public Limited Company; Threadneedle Insurance Company Limited; Minster Insurance Company Limited; Marine Insurance Company Limited Aviation Account, The; Yorkshire "T" Insurance Company Limited; Commercial Union Assurance Company Limited; Nippon Fire and Marine Insurance Company (UK) Limited; Switzerland General Insurance Company (London), per English Aviation Group; Cigna Insurance Company Limited; Compagnie D'Assurances Maritimes Aeriennes Et Terrestres; Assurance Generales De France; Groupe Des Assurances Natio-

nales Incendie Accidents, per Westminster Aviation Insurance Group; Aegon Insurance Company (UK) Limited; Assicurazioni Generali Di Trieste e Venezia SpA; Dominion Insurance Company Limited, The, Plaintiffs,

v.

ARTHUR J. GALLAGHER & CO.; Gallagher Bassett Service, Inc.; Gallagher Plumer Ltd.; International Special Risk Services, Inc., Defendants.

No. 2:94–CV–152.

United States District Court, D. Vermont.

Oct. 1, 1996.

Franklin F. Bass, Rosenman & Colin, New York, NY, John Lewis Franco, Jr., Burlington, VT, for plaintiffs.

Charles Norman Hurt, Jr., Downs, Rachlin & Martin, St. Johnsbury, VT, Michael W. Coffield, Stephen O'Donnell, Theodore E. Harman, Coffield, Ungaretti & Harris, Chicago, IL, for defendants.

## OPINION AND ORDER

SESSIONS, District Judge.

This is an action for breach of contract and professional negligence in which an insurance broker (hereinafter "Defendants") allegedly failed to provide notice of a claim against the insured (hereinafter "Burlington") to the insurer (hereinafter "Underwriters"). The matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). The Report and Recommendation of the Magistrate Judge denying the three summary judgment motions as well as Defendants' motion to disqualify Plaintiffs' counsel was filed October 27, 1995. Defendants filed objections to the Report and Recommendation on November 20, 1995 and Plaintiffs timely submitted opposition. Plaintiffs filed objections on November 21, 1995, which Defendants have opposed.

This Court must make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. It may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). After careful review of the file, the Magistrate Judge's Report and Recommendation, the objections, and response to objections, the Court modifies the proposed findings as follows.

Because the facts of this case have been thoroughly and accurately recounted in the Report and Recommendation, they need not be repeated here. Thus, the Court turns to a review of the merits.

### I. *Estoppel*

Plaintiffs move for partial summary judgment to estop Defendants from litigating the reasonableness of Burlington's defense and settlement of the underlying *Business Air* action and Underwriter's subsequent settlement with Burlington for the insurance claim. (Paper #31). Plaintiffs contend that Defendants are estopped because Defendants failed to notify Underwriters of the *Business Air* action and, as a result, allegedly caused Underwriters 1) to breach a duty to defend Burlington, and 2) to fail to respond timely to Burlington's notice of claim, thereby prohibiting Underwriters from raising coverage defenses against Burlington's insurance claim. This Court adopts the recommendation of the Magistrate Judge that summary judgment be denied, but it does so for the reasons set forth below.

### A. *Duty to Defend*

A fundamental premise of Plaintiffs' first and principal argument is that Underwriters had a duty to defend Burlington. Recognizing this, Plaintiffs begin their argument by stating "the AIRPORT OWNERS AND OPERATORS POLICY issued by Underwriters contained a duty to defend clause which 'only confirms by contract what courts have held in countless cases.'" (citing *Commercial Insurance Co. of New Jersey v. Papandrea*, 121 Vt. 386, 390, 159 A.2d 333, 335 (1960)). Mem. Supp.Part.Summ.J. at 6 (Paper #32) [1]. In support of their contention that Underwriters had a duty to defend Burlington, Plaintiffs aver "[a] defense is owed 'whenever it is clear that the claim against the insured *might* be of the type covered by the policy.'" (citing *Garneau v. Curtis & Bedell*, 158 Vt. 363, 610 A.2d 132 (1992)). *Id.* at 7. Although literally accurate, Plaintiffs' statements enmesh the distinct concepts of the existence of a duty to defend and the scope of a duty to defend.

■ The duty to defend is contractual. 7C Appleman, Insurance Law and Practice, § 4682 (1979 & Supp.1995). Or, put another way, if there is no contract to defend, there is no duty to defend. *Id.; see also Aetna Casu-*

---

**1.** The full statement in *Papandrea* upon which Plaintiffs rely provides: "The provision in the policy requiring the insurer to defend the insured in any suit, although it be groundless, false or fraudulent, is to the same effect. It only confirms by contract what the courts have held in countless cases." 121 Vt. at 390, 159 A.2d 333. See *infra* for further discussion.

*alty & Surety Co. v. Sullivan,* 33 Mass.App. Ct. 154, 597 N.E.2d 62, 63 (1992) (the source of the duty to defend is the contractual agreement); *Brown v. Lumbermens Mutual Casualty Co.,* 326 N.C. 387, 390 S.E.2d 150, 152 (1990) (there is no requirement that an insurance company provide its insured with a defense, however "a company may provide by contract that it will defend its insured"); *Carrousel Concessions, Inc. v. Florida Ins. Guaranty Ass'n,* 483 So.2d 513, 516 (Fl.Dist. Ct.App.1986) ("an insurer's duty to defend arises solely from the language of the insurance contract").

■ Thus, determining whether an insurer owes an insured a duty to defend for a particular claim requires a two part analysis: first, the language of the policy must be reviewed; second, assuming that the contract creates a duty, a comparison of the allegations in the complaint against the occurrences covered by the policy must be made. *See Sullivan,* 597 N.E.2d at 63 (in deciding whether there is a duty to defend, the court first must consider the applicable provision of the insurance policy in effect at the time in question); *Fitzpatrick v. American Honda Motor Co.,* 78 N.Y.2d 61, 571 N.Y.S.2d 672, 675, 575 N.E.2d 90, 93 (1991) ("the duty to defend derives, in the first instance, not from the complaint drafted by a third party, but rather from the insurer's own contract with the insured"); *Ritter v. United States Fidelity & Guaranty Co.,* 573 F.2d 539, 542 (8th Cir.1978) ("The nature of the insurer's duty to defend is purely contractual and depends, in the first instance, on the language of the particular policy involved. The scope of the insurer's obligation to defend is determined by the allegations of the complaint against the insured, regardless of the falsity of any of these allegations.").

The cases cited by Plaintiffs, including *Papandrea* and *Garneau,* are inapposite to the first part of the inquiry.[2] *E.g., Papandrea,* 121 Vt. at 390, 159 A.2d 333 (when placed in context, the section quoted by Plaintiffs means only that a duty to defend, once con-

tracted for, requires an insurer to defend the insured against claims within policy coverage even if they are groundless, false or fraudulent (citing *Goldberg v. Lumber Mutual Casualty Ins. Co.,* 297 N.Y. 148, 77 N.E.2d 131, 133 (1948))); *Garneau,* 158 Vt. at 365, 610 A.2d 132 (insurer conceded that the policy provided a duty to defend; issue was whether certain policy exclusions applied such that there could be no duty to indemnify, and hence no duty to defend). Rather, they stand for the proposition that when a contract provides a duty to defend, the insurer will be required to defend any claim that potentially falls within policy coverage.

In deciding whether there is a duty to defend in the instant matter, the Court begins its analysis by referring to the Policy language. The relevant language in the Policy provides:

Payment of Costs:—

In addition to the limits set out in the Schedule, Underwriters will pay all legal and other costs incurred with their consent in the defence of any claim made against the Assured,

PROVIDED THAT

in the event of their requiring any claim to be contested

a) If the claim be successfully resisted by the Assured the Underwriters will pay all costs, charges and expenses incurred by the Assured in connection therewith up to but not exceeding the sum insured under this Policy.

Def.'s Ex. A att. to Paper # 48. In addition Paragraph 6(a) of the Policy's General Conditions reads:

No liability shall be admitted and no admission arrangement, offer, promise or payment shall be made by the Assured without the written consent of Underwriters, who shall be entitled, if they so desire, to take over and conduct in the name of the Assured the defence of any claim or to prosecute in the name of the Assured or for their own benefit any claim for indem-

---

2. Pursuant to an order of this Court, the parties were asked to brief the issue of whether the specific language used in the Policy created a duty to defend or an option to defend. Plaintiffs made a cursory response, citing only the Magistrate Judge's unsupported conclusion that there was a duty to defend.

nity or damages or otherwise against any third party, and shall have full discretion in the conduct of any negotiations or proceedings or the settlement of any claim, and the Assured shall give all such information and assistance as Underwriters may require.

*Id.*

■ In Vermont insurance policies are interpreted according to their terms and the evident intent of the parties as expressed in the policy language. *City of Burlington v. National Fire Ins. Co.*, 163 Vt. 124, 655 A.2d 719, 721 (1994). Courts across the country have construed policy language requiring the consent of the insurer as creating an option, but not a duty, to defend. *See Chesapeake & Ohio Railway Co. v. Certain Underwriters at Lloyd's, London, et al.*, 834 F.Supp. 456, 460 (D.D.C.1993), *aff'd in part, rev'd in part on other grounds, CSX Transp., Inc. v. Commercial Union Ins. Co.*, 82 F.3d 478 (D.C.Cir.1996); *Botany Bay Marina, Inc. v. Great American Ins. Co.*, 760 F.Supp. 88, 91–92 (D.S.C.1991); *Crown Center Redevelopment Corp. v. Occidental Fire & Casualty Co. of North Carolina*, 716 S.W.2d 348, 356 (Mo.App.1986).[3]

■ In *Botany Bay*, the court reviewed a policy providing that no legal costs or expenses would be covered without the consent of the insurer and held that, in accordance with the plain language of the policy, there was no duty to defend. 760 F.Supp. at 91–92; *see also Chesapeake and Ohio Railway Co.*, 834 F.Supp. at 461 (stating that the language requiring consent is unambiguous and does not create an unconditional duty to defend). Interpreting a similar policy provision, the *Crown Center* court reasoned that it created no duty to defend because

the obligation of [the insurer] to pay defense costs is neither fixed nor absolute. The obligation is plainly stated that [the insurer] will pay costs which may be in-

curred by the insured with the consent of [the insurer]. Thus, the entire obligation is conditioned on the consent of [the insurer].

716 S.W.2d at 357.

■ Likewise, policy language allowing the insurer to assume the defense and control of any claim against the insured creates an option, not an obligation, to defend the insured. *Laster v. American National Fire Ins. Co.*, 775 F.Supp. 985, 995 (N.D.Tex. 1991), *aff'd*, 966 F.2d 676 (5th Cir.1992); *see also City of Peoria v. Underwriter's at Lloyd's London, Unincorporated*, 290 F.Supp. 890, 892 (S.D.Ill.1968) (a policy providing that the insurers may " 'if they so desire, take over the conduct ... of the defense of any claim' " establishes a right, but not an obligation, to defend the insured).

■ Because Plaintiffs have not asserted that Underwriters consented to Burlington's conduct of the defense in the underlying *Business Air* action, the Court cannot find that Underwriters had a duty to defend Burlington as a matter of law. Based on this Court's interpretation of the Policy language as creating only an option to defend, it need not reach the second part of its inquiry. Accordingly, Plaintiffs' argument collapses, *see Eason v. Weaver*, 557 F.2d 1202, 1205 (5th Cir.1977) (when there is only an unexercised option to defend, insurer is not estopped from asserting coverage defenses), and summary judgment must be denied.

### B. *Failure to Respond*

Plaintiffs contend that an insurer presented with a claim must deny liability within a reasonable time or be estopped from asserting coverage defenses. To buttress their position, Plaintiffs cite to a Vermont statute providing in relevant part:

The following are hereby defined as unfair methods of competition or unfair or decep-

---

**3.** Note that policies traditionally providing a duty to defend state that the insurance company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages [for covered claims] ... and the company shall have the right and duty to defend any suit against the insured seeking

damages [for said covered claims], even if any of the allegations of the suit are groundless, false or fraudulent.... *See City of Burlington*, 655 A.2d at 720 (quoting the relevant policy language from the insurance contract at issue).

tive acts or practices in the business of insurance:

(9) Unfair claim settlement practices. Committing or performing with such frequency as to indicate a business practice any of the following:

(B) failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(D) refusing to pay claims without conducting a reasonable investigation based upon all available information;

(E) failing to affirm or deny coverage of claims within a reasonable amount of time. . . .

Vt.Stat.Ann. tit. 8 § 4724(9)(B), (D)–(E) (1984). Because Defendants were Underwriters' agents for the limited purpose of receiving notice of a claim, *see* Report and Recommendation at 9–10, Underwriters are deemed to have notice of Burlington's claim as of August 10, 1989. In fact, Defendants did not forward notice of Burlington's claim to Underwriters until December 13, 1993. Underwriters claim they were then unable to assert coverage defenses because of their unreasonable delay in notifying Burlington of their intent to do so. They insist that their estoppel was caused by Defendants and thus, should be extended to Defendants.

■ Assuming *arguendo* that an insurer has a duty to deny coverage seasonably independent of a duty to defend,[4] the Court holds there is no estoppel in the absence of prejudice. "While an insurer may ... be estopped from relying on a defense by its unreasonable delay in notifying the insured that it intends to rely on such defense, it will not be barred where . . . . the insured was not injured by the delay." 16C Appleman, Insurance Law and Practice § 9361 at 540–42. *See also, Mancini v. Thomas,* 113 Vt. 322, 330, 34 A.2d 105 (1943) (in holding that estoppel applied, the court noted "the controlling factors are the inconsistent positions taken by the [insurance] company and prejudice of the [insured's] rights by its conduct"); *Liberty Mutual Ins. Co. v. Cleveland,* 127 Vt. 99,

103, 241 A.2d 60 (1968) (in order to establish estoppel, the party asserting it must show that he or she has been misled to his or her prejudice).

■ Whether an insured is prejudiced by an insurer's conduct is generally a question of fact. *Maryland Cas. Co. v. Peppers,* 64 Ill.2d 187, 355 N.E.2d 24, 28 (1976). The only evidence of prejudice presented by Burlington is the delay in being notified as to whether it would in fact be covered for the *Business Air* claim. Although a long delay is a factor to be considered in determining prejudice, it does not conclusively resolve the issue. *Kenilworth Ins. Co. v. McDougal,* 20 Ill.App.3d 615, 313 N.E.2d 673, 677 (1974); *Vasilakis v. Safeway Ins. Co.,* 46 Ill.App.3d 369, 5 Ill.Dec. 1, 4, 361 N.E.2d 1, 4 (1977).

■ Moreover, failure to comply with the notice provision of an insurance statute is not sufficient to show prejudice as a matter of law. *Cleveland,* 127 Vt. at 103, 241 A.2d 60. Accordingly, the issue of prejudice presents a question of fact, and summary judgment must be denied.

## II. *Lost Opportunities as Harm*

■ Plaintiffs and Defendants have filed cross-motions for summary judgment on the question of liability. (Papers # 46 and # 53). Underwriters contend that because of Gallagher's failure to forward timely notice of the *Business Air* action to them, they suffered harm in the form of lost opportunities to investigate seasonably the claim, to make a reasonable settlement determination, to exercise their option to take over the defense, and to establish sufficient reserves.

Defendants argue that these "lost opportunities" represent only nominal harm and thus summary judgment on the issue of liability in favor of Plaintiffs is inappropriate. Moreover, Defendants urge the Court to grant summary judgment in their favor because the *Business Air* claim was excluded from Burlington's policy coverage and therefore, any payment from Underwriters to Burling-

---

4. *Compare St. Paul Fire and Marine Ins. Co. v. Children's Hospital Nat'l Medical Ctr.,* 670 F.Supp. 393, 402 (D.D.C.1987) (the duty to dis- claim coverage or to reserve rights is a part of the duty to defend).

ton was gratuitous. For the reasons set forth below, the Court adopts the Magistrate Judge's recommendation that both motions for summary judgment be denied.

To establish liability, Plaintiffs must show that Defendants breached a duty owed to Plaintiffs which proximately caused Plaintiffs' harm. It is undisputed that Defendants owed a duty to both Burlington and Underwriters to forward notice of the *Business Air* claim to Underwriters and that Defendants breached this duty by failing to forward notice for over four years. Accordingly, the issue before the Court is whether Plaintiffs suffered harm as a result of Defendants' breach.

Based on a review of the case law, this Court finds that lost opportunities clearly constitute harm; however, such harm is difficult to quantify. As the Second Circuit Court of Appeals recently stated:

> The value to an insurance company of the opportunity to settle a claim early should not be underestimated. Early settlements limit the company's exposure and may protect the insured from a judgment in excess of policy coverage. When notice of claim is delayed, the ability of the insurance company to approach the injured party with a settlement offer early in the litigation is often lost.

*AXA Marine and Aviation Ins. (UK) Ltd. v. Seajet Industries, Inc.,* 84 F.3d 622, 627 (2d Cir.1996) (applying the "no prejudice rule" of New York; however, Vermont adopted a similar rule in *Houran v. Preferred Acc. Ins. Co.,* 109 Vt. 258, 272, 195 A. 253 (1938)). Nonetheless, "[t]he loss an insurer suffers when it misses the early opportunity to settle a case ... [or] to promptly investigate an occurrence, is difficult to quantify or prove." *Id.* at 626. Thus, the fact that lost opportunities constitute harm does not end the inquiry. Recovery in tort actions depends upon a showing of compensable harm. "Nominal damages to vindicate a technical right cannot be recovered in a negligence action where no actual loss has occurred." W. Prosser, Law of Torts at 143 (4th ed.1971). "If there is no liability without damage and damages are in ' dispute, no Rule 56(c) summary judgment should be granted." 10A Charles Alan

Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2736 at 447 (1983). Some courts have even refused to grant summary judgment simply because the damage and liability issues were very closely connected. *Id.*

Here, if the *Business Air* claim were not covered by the Policy, it would be difficult to ascertain the appropriate damages, if any. In contrast are those cases in which it is clear that some damages are recoverable and the only question is the amount. *See Danton v. Harry Winston, Inc.,* 20 F.R.D. 425 (D.C.N.Y.1957) (motion for summary judgment on liability granted when it appeared beyond peradventure that the plaintiffs had not been paid for services rendered and the only remaining issue was whether the fees sought were excessive); *Newmark v. RKO General Inc.,* 294 F.Supp. 358, 359, n. 2 (S.D.N.Y.1968) *aff'd on other grounds,* 425 F.2d 348 (2d Cir.), *cert. denied* 400 U.S. 854, 91 S.Ct. 64, 27 L.Ed.2d 91 (1970) (summary judgment was granted on the issue of liability when the defendant recovered short-swing profits in violation of the Securities Exchange Act of 1934, leaving for future determination the exact amount of profits realized). Because the issues of liability and damages are intertwined, the Court denies Plaintiffs' Motion for Summary Judgment.

The Court next considers Defendants' assertion that the *Business Air* claim did not come within policy coverage because: 1) Burlington failed to satisfy the condition that it properly maintain the South Hangar; 2) the Business Air claim constitutes liability assumed under a contract, which is expressly excluded under the Policy; and 3) timely notice is a condition precedent of coverage and Burlington's notice to Gallagher was untimely. The Court shall address each argument in turn.

First, Defendants assert that Burlington's failure to exercise reasonable care in maintaining the South Hangar precludes coverage under the Policy. The condition at issue states:

> [Burlington] shall and will at all times exercise reasonable care in seeing that the ways, implements, plant, machinery and

appliances used in [Burlington's] business are substantial and sound and in proper order, and fit for the purpose for which they are used, and that all reasonable safeguards and precautions against accidents are provided and used.

Def.'s Ex. A att. to Paper # 48. Although Defendants present some evidence that Burlington could have reconstructed the roof trusses to stabilize the roof of the South Hangar, *see* Def.'s Exs. C–E att. to Paper # 87, the Court finds that whether Burlington "exercised reasonable care" in accordance with the policy condition is a question of fact. Thus, it adopts the reasoning of the Magistrate Judge, *see* Report and Recommendation at 14–15, and finds summary judgment on this ground to be inappropriate.

■ Defendants also argue that Burlington's liability resulted from its intentional failure and refusal to honor its repair obligations under the Lease Agreement it had with Northern Airways for the occupancy of the South Hangar, and therefore it falls under a stated Policy exclusion.[5] The full text of the Policy exclusion in question provides:

> This Policy does not cover liability assumed by [Burlington] by Agreement under any Contract unless such liability would have attached to the Assured even in the absence of such Agreement.

Def.'s Ex. A att. to Paper # 48. Although Northern counterclaimed against Burlington for failing to honor its contractual duty under the Lease Agreement, it is undisputed that Business Air filed suit against Burlington in

a separate action for continuing damages "as a result of its ejectment and/or constructive eviction" by Burlington. This complaint was later amended to state a cause of action for "wrongful eviction," a claim that clearly falls within the Personal Injury Extension of the Policy.[6]

The mere labeling of a cause of action as one which falls within policy coverage does not conclusively resolve the issue, *see generally City of Burlington,* 655 A.2d at 719; however, the underlying facts of the *Business Air* claim suggest that Business Air was seeking recovery, at least in part, because Burlington had ousted it from possession of the South Hangar. As the Magistrate Judge correctly noted, "[w]here the facts are such that an insured's liability exists on one theory as well as another and one of the theories brings the liability within coverage, the insured may avail itself of the coverage." *Aetna Casualty and Surety Co. v. Lumbermens Mutual Casualty Co.,* 136 A.D.2d 246, 248, 527 N.Y.S.2d 143, *appeal denied* 73 N.Y.2d 701, 535 N.Y.S.2d 595, 532 N.E.2d 101 (1988). This is congruent with the Policy exclusion language which provides "unless such liability would have attached to the Assured even in the absence of such an agreement."

■ Finally, Defendants contend that notice is a condition precedent to coverage[7] and Burlington failed to give them notice of the *Business Air* claim within a reasonable time. The relevant Policy language provides:

---

**5.** Burlington entered into a Lease Agreement with Northern Airways for the lease of the South Hangar from January 1986 to December 31, 2005. *Northern Airways subsequently sublet the hangar to Business Air, Inc.*

**6.** The Personal Injury Extension of the Policy provides coverage for "legal liability for damages sustained by any person arising out of one or more of the following offenses committed during the policy period . . ." including "wrongful entry, eviction or other invasion of the right of private occupancy."

**7.** Because the Court finds that notice is ultimately a question of fact, it need not address the issue of whether notice is a condition precedent to coverage. However, it notes:

> The rule established by the weight of authority is that where, by the terms of the insurance

contract, a specified notice of accident, given by or on behalf of the insured to the insurer, is made a condition precedent to liability on the part of the latter, the failure to do so will release the insurer from the obligations imposed by the contract, although no prejudice may have resulted.

*Houran,* 109 Vt. at 272, 195 A. 253; *see also Vermont Gas Systems, Inc. v. United States Fidelity & Guaranty Company,* 805 F.Supp. 227 (D.Vt. 1992). Based on *Houran,* it appears that whether failure to give notice in a timely manner bars recovery by the insured depends in the first instance on the language of the contract. Any argument that *Vermont Gas* obviated the need to look at the language of the contract is not particularly compelling as that issue was not squarely before the Court.

Upon the happening of any accident likely to give rise to a claim under this Policy or upon the receipt by the Assured of notice of any claim or of any other subsequent proceedings, notice in writing with full particulars shall be given to the Underwriters as soon as possible after same shall come to the knowledge of the Assured of the Assured's representative. Every letter, claim, writ, summons or process shall be forwarded to Underwriters immediately on receipt by the Assured.

"Whether a notice has been given with reasonable promptness is ordinarily a question of fact for the trier to decide upon the evidence bearing upon the point." *Houran*, 109 Vt. at 266, 195 A. 253. For this reason as well as those set forth in the Report and Recommendation, the Court denies Defendants' Motion for Summary Judgment on the grounds of failure to provide notice.

### III. *Disqualification of Plaintiffs' Counsel*

The Court adopts the Magistrate Judge's recommendation that Defendants' Motion to disqualify Plaintiffs' counsel be denied for the reasons cited therein. *See* Report and Recommendation at 27–30.

### IV. *Conclusion*

For the reasons set forth above, this Court hereby ADOPTS the Magistrate Judge's recommendation that the respective Motions for Summary Judgment and the Motion for Disqualification of Plaintiffs' Counsel be DENIED. It is SO ORDERED.